IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KENNETH LAKE, CRYSTAL LAKE,      )      CIVIL 16-00555 LEK-KJM
HAROLD BEAN, MELINDA BEAN,       )
KYLE PAHONA, ESTEL PAHONA,       )
TIMOTHY MOSELEY, and ASHLEY      )
MOSELEY,                         )
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )
                                 )
OHANA MILITARY COMMUNITIES,      )
LLC, FOREST CITY RESIDENTIAL     )
MANAGEMENT, INC.; and DOE        )
DEFENDANTS 1-10,                 )
                                 )
          Defendants.            )
_____  )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

On October 20, 2016, Defendants Ohana Military

Communities, LLC ("Ohana") and Forest City Residential

Management, LLC ("Forest City" and collectively, "Defendants")

filed their Motion to Dismiss ("Motion").[1]  [Dkt. no. 8.]

Plaintiffs Kenneth Lake, Crystal Lake, Harold Bean, Melinda Bean,

Kyle Pahona, Estel Pahona, Timothy Moseley, and Ashley Moseley,

for themselves and on behalf of all others similarly situated

("Plaintiffs") filed their memorandum in opposition on May 1,

2017, and Defendants filed their reply on May 8, 2017.  [Dkt.

---

[1] Defendants state that Forest City Residential Management,
LLC is the successor by conversion to Forest City Residential
Management, Inc.  [Motion at 2.]  Forest City Residential
Management, Inc. is the entity named in the Complaint and
reflected in the case caption.

nos. 57, 59.]  This matter came on for hearing on May 22, 2017.
On June 29, 2017, this Court issued an entering order stating
that the Motion was granted in part and denied in part ("6/29/17
EO Ruling").  [Dkt. no. 62.]  The instant Order supersedes the
6/29/17 EO Ruling.  Defendants' Motion is hereby granted in part
and denied in part for the reasons set forth below.

<u>**BACKGROUND**</u>

Plaintiffs filed their Complaint in state court on
September 14, 2016.  Defendants filed its Notice of Removal on
October 13, 2016.  [Dkt. no. 1.]

The Complaint alleges that Plaintiffs leased housing on
the Kaneohe Marine Corp Base Hawaii ("MCBH") from Defendants
after 2006.  They had various lease terms, the earliest starting
in August 2008.  When Plaintiffs filed the Complaint, Plaintiffs
Kyle and Estel Pahona were still residing at MCBH.  All of the
other Plaintiffs are former MCBH residents, the latest of them
leaving in December 2015.  [Notice of Removal, Decl. of
Christine A. Terada, Exh. 1 (Complaint) at ¶¶ 149-54.]

Plaintiffs allege that Defendants are "engaged in the
joint-enterprise of developing privatized military housing at
MCBH, marketing and sales of residential leases, sales of
renter's insurance policies, providing property management and
maintenance services."  [<u>Id.</u> at ¶ 157.]  Plaintiffs note that, in
1996, the Military Housing Privatization Initiative ("MHPI")

2

"authorized legislation to privatize military housing whereby private companies were allowed to own and manage housing on military bases."  [Id. at ¶ 159.]  Among other things, the MHPI provides a Basic Allowance for Housing ("BAH") for service members who do not receive government housing.  A service member can use the BAH to pay for private housing, either on the military base or off-base.  [Id. at ¶ 161.e.]

According to the Complaint, Ohana "was created to renovate and construct new housing at" MCBH, [id. at ¶ 160,] and Forest City is Ohana's agent that "manage[s] residential housing at MCBH on Ohana's behalf under the term of Ohana's lease with military families."  [Id. at ¶ 161.]  Ohana, through Forest City, "provides services to military families at MCBH related to the marketing, sale, and management of residential leases, sale of renter's insurance policies, and provision of property management and maintenance programs."  [Id. at ¶ 161.b.]  The terms of the MCBH leases require Ohana to "provide safe and habitable housing."  [Id. at ¶ 164.b & n.6 (citing Ohana's Exemplar Lease Agreement at 5, ¶ 12).]

Ohana began leasing new and previously constructed housing on MCBH to military families in approximately 2006. Ohana also began demolition of older housing units to build new units for future lease, and – according to the Complaint – the demolition work was continuing at the time Plaintiffs filed the

3

Complaint.  [Id. at ¶ 165.]  Plaintiffs allege that, even before Ohana assumed control of the MCBH housing, Ohana was warned by a contractor that had previously been hired to perform the same work that the soil on MCBH was contaminated with various pesticides.  [Id. at ¶¶ 165-66.]  Defendants, however, did not disclose the contaminated soils in marketing, leasing, managing, and maintaining the residential units.  [Id. at ¶¶ 168, 171.]

Ohana confirmed the pervasive soil contamination through additional testing until it "concluded that all neighborhoods at MCBH should be assumed to contain pesticide impacted soils beneath all existing foundations and all surrounding perimeters."  [Id. at ¶ 170 (emphasis omitted).]  Defendants therefore created a Pesticide Soils Management Plan ("Soil Plan"), with input from the State of Hawai`i Department of Health ("DOH").  [Id. at ¶ 172.]  The Soil Plan included Tier 2 environmental action levels ("EALs") for the pesticides at issue in this case that were "above the Tier 1 EALs . . . based on the flawed assumption that military families would not live at MCBH longer than 6 years."[2]  [Id. at ¶ 172.a.]  Plaintiffs emphasize that this means "that military families are exposed to higher excess cancer/non-cancer risks of at least 'one in one-hundred thousand' (10-5) rather than the regular Tier 1 level of less

---

[2] The Complaint attributes the Tier 1 and Tier 2 EALs to the Environmental Protection Agency ("EPA").  See, e.g., Complaint at ¶ 171.

than a 'one-in-a-million' excess risk." [Id. at ¶ 172.b.]  The

Soil Plan also included:

-recommended remediation practices to address the contaminated
     soils, for example, "confirming that 'no visible dust'
     should occur during demolition and construction"; [id. at
     ¶ 173.c;]

-a statement that maps showing where contaminated soils had been
     found and addressed would be maintained and made available
     to the Department of the Navy ("the Navy"), the MCBH
     management, and the DOH; [id. at ¶ 173.d;] and

-a statement that residents would receive written notice anywhere
     contaminated soils may be present [id. at ¶ 173.e].

Plaintiffs allege that Defendants assumed existing leases and

entered into new leases without disclosing the soil

contamination, the Soil Plan, or the fact that the contamination

increased cancer risks for MCBH residents.  Plaintiffs also

allege that Defendants failed to follow the Soil Plan.  [Id. at

¶¶ 175-76.c.]

     When Plaintiffs discovered Defendants' failure to

disclose the soil contamination, Plaintiffs made a demand for

mediation under the terms of their leases to address the failure

to disclose the contamination and the failure to provide safe and

habitable housing from 2005 to the present.  [Id. at ¶¶ 178-79.]

     The Complaint alleges the following claims: breach of

contract against Ohana ("Count I");[3] breach of the implied

_____

     [3] In addition to the two issues for which Plaintiffs
demanded mediation, their breach of contract claim also alleges

                                        (continued...)

                              5

warranty of habitability against Ohana ("Count II"); a claim against Defendants for violation of the Landlord Tenant Code, Haw. Rev. Stat. Chapter 521 ("Count III"); an unfair and deceptive trade practices ("UDAP") claim against Defendants pursuant to Haw. Rev. Stat. § 480-2 ("Count IV"); a negligent failure to warn claim against Defendants ("Count V"); a claim for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") against Defendants ("Count VI"); a fraud claim against Defendants ("Count VII"); a negligent misrepresentation claim against Defendants ("Count VIII"); an unfair competition claim ("UMOC") against Defendants pursuant to § 480-2(a) ("Count IX"); a trespass claim against Defendants ("Count X"); and a nuisance claim against Defendants ("Count XI").

Defendants seek to dismiss all of Plaintiffs' claims with prejudice.  All of the claims are dismissed without prejudice, except that Plaintiffs' claims for unfair and deceptive acts or practices, unfair methods of competition, and trespass are dismissed with prejudice.  Plaintiffs have leave to file an amended complaint by **September 6, 2017**, as to those counts dismissed without prejudice.

---

[3](...continued)
that Ohana breached their leases by failing to comply with the Soil Plan.  [Complaint at ¶ 184.c.]

## DISCUSSION

### I.   The Parties' Exhibits

Defendants filed a Request for Judicial Notice in Support of Their Motion to Dismiss ("RJN") on October 20, 2016, and Plaintiffs filed a response to the RJN ("RJN Response") on May 4, 2017.  [Dkt. nos. 9, 58.]  Defendants' RJN asks this Court to take judicial notice of four exhibits, and Plaintiffs' RJN Response asks this Court to take judicial notice of two exhibits. All six exhibits are documents filed by either the district court or the parties in Barber v. Ohana Military Communities, LLC, CV 14-00217 HG-KSC.[4]

As a general rule, this Court's scope of review in considering a motion to dismiss is limited to the allegations in the complaint.  See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Ordinarily, consideration of other materials requires the district court to convert a motion to dismiss to a motion for summary judgment.  Yamalov v. Bank of Am. Corp., CV. No. 10-00590 DAE-BMK, 2011 WL 1875901, at *7 n.7 (D. Hawai`i May 16, 2011) (citing Parrino v. FHP, Inc., 146 F.3d 699,

---

[4] Barber was a putative class action brought by other MCBH residents alleging claims against Ohana and Forest City that were similar to Plaintiffs' claims in the instant case.  The parties in Barber reached a settlement, but there are still issues related to the settlement that are being litigated.

706 n.4 (9th Cir. 1998)).[5]  However, a district court ruling on a motion to dismiss can also consider matters that are subject to judicial notice.  <u>Cf.</u> <u>Thomas v. Fin. Recovery Servs.</u>, No. EDCV 12-1339 PSG (Opx), 2013 WL 387968, at *2 (C.D. Cal. Jan. 31, 2013) ("It is well-settled that . . . matters that are subject to judicial notice may also be considered in evaluating a motion for judgment on the pleadings." (citing <u>Buraye v. Equifax</u>, 625 F. Supp. 2d 894, 896-97 (C.D. Cal. 2008); <u>Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.</u>, 583 F.2d 426, 429-30 & n.2 (9th Cir. 1978))).  "It is well established that federal courts may take judicial notice of related court orders and proceedings in deciding a Motion to Dismiss."  <u>Aqbannaoaq v. Ocwen Loan Servicing, LLC</u>, Civ. No. 16-00394 HG-RLP, 2016 WL 6436620, at *4 (D. Hawai`i Oct. 25, 2016) (citing <u>ScripsAmerica, Inc. v. Ironridge Global LLC</u>, 56 F. Supp. 3d 1121, 1136 (C.D. Cal. 2014) (citing <u>United States v. Black</u>, 482 F.3d 1035, 1041 (9th Cir. 2007))).  This Court therefore grants the RJN and the RJN Response and takes judicial notice of the <u>Barber</u> filings attached thereto.

In addition to the <u>Barber</u> filings, Defendants attached another exhibit to the Motion, and Plaintiffs attached three other exhibits to their memorandum in opposition.  In ruling on

---

[5] <u>Parrino</u> was superseded by statute on other grounds, as stated in <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 681-82 (9th Cir. 2006) (per curiam).

the Motion, this Court can consider these exhibits if they are documents "on which the complaint necessarily relies [and]: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the [Fed. R. Civ. P.] 12(b)(6) motion." See Daniels-Hall, 629 F.3d at 998 (citations and internal quotation marks omitted). However, because the exhibits attached to the Motion and the memorandum in opposition are not necessary to the issues addressed in this Order, this Court declines to consider the exhibits in ruling on the merits of the Motion.

## II. <u>Count IV - UDAP</u>

First, Defendants argue that Count IV fails as a matter of law because Plaintiffs lack standing to bring a UDAP claim. Haw. Rev. Stat. § 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Haw. Rev. Stat. § 480-13(b) states, in pertinent part:

> Any **consumer** who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:
>
> (1)  May sue for damages sustained by the consumer . . . ; and
>
> (2)  May bring proceedings to enjoin the unlawful practices . . . .

(Emphasis added.)  In addition, Haw. Rev. Stat. § 480-2(d)

9

states: "**No person other than a consumer**, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." (Emphasis added.) This Court has stated that

> a plaintiff who is not a "consumer" lacks standing to bring a Chapter 480 UDAP claim. See, e.g., Liberty Mut. Ins. Co. v. Sumo-Nan LLC, Civil No. 14-00520 DKW-KSC, 2015 WL 4093337, at *9 (D. Hawai`i July 6, 2015).
>
> For purposes of Chapter 480: "'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Haw. Rev. Stat. § 480-1. The Hawai`i Supreme Court has held that "real estate or residences do not qualify as 'goods' under HRS § 480-1." Cieri v. Leticia Query Realty, Inc., 80 Hawai`i 54, 66, 905 P.2d 29, 41 (1995). The supreme court held that the plaintiffs did "not have standing as 'consumers' to bring a claim alleging a violation of HRS chapter 480 for the real estate transaction at issue in [that] case as purchasers of 'goods.'" Id. However, it also held that "real estate or residences qualify as 'personal investments' pursuant to HRS § 480-1." Id. at 69, 905 P.2d at 44.

Flynn v. Marriott Ownership Resorts, Inc., 165 F. Supp. 3d 955, 967–68 (D. Hawai`i 2016) (alteration in Flynn) (footnote omitted).

There is federal enclave jurisdiction over Plaintiffs' state law claims in this case. [Order Denying Defs.' Motion to Disqualify Counsel and/or for Sanctions and Denying Pltfs.'

Motion for Remand, filed 3/15/17 (dkt. no. 49) ("3/15/17 Order"), at 34.]  In evaluating Plaintiffs' claims, Hawai`i substantive law is applied, as long it does not interfere with the federal government's jurisdiction over the enclave.  See Howard v. Comm'rs of the Sinking Fund of Louisville, 344 U.S. 624, 627 (1953).  Here, Hawai`i law applies to all Plaintiffs' claims because there is no indication that the application of the relevant Hawai`i law would interfere with the federal government's jurisdiction over MCBH.

Yet to be addressed is the issue of whether a renter of real property or a residence is a "consumer" with standing to bring a § 480-2 UDAP claim.

> In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  [Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011)]; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawai`i Supreme Court would decide the issue." (quotation and brackets omitted)).

Evanston Ins. Co. v. Nagano, 891 F. Supp. 2d 1179, 1189 (D. Hawai`i 2012) (some citations omitted).  Thus, this Court must predict whether the Hawai`i Supreme Court would hold that a renter of residential property is a "consumer" for purposes of Chapter 480 under the facts of this case.

11

First, since the purchase of a residence is not the purchase of goods under Chapter 480, <u>Cieri</u>, 80 Hawai`i at 66, 905 P.2d at 41, it follows that the lease of a residence is also not the purchase of goods under Chapter 480.

Second, while the purchase of a residence constitutes a personal investment for purposes of § 480-1, the lease of a residence does not.  In holding that the purchase of real estate or a residence constituted a personal investment, the Hawai`i Supreme Court stated:

> "Invest" is defined in pertinent part as "to put (money) to use, by purchase or expenditure, in something offering profitable returns, esp. interest or income."  The Random House College Dictionary, at 702 (Rev. ed. 1979).  We believe that, as previously noted, real estate is, particularly in Hawai`i, both scarce and expensive.  As a result, the purchase of real estate or a residence likely is the largest "investment" a person in Hawai`i may make in a lifetime.
>
> We further believe that, contrary to [the defendant's] contentions, **real estate may be purchased with an intent to reside on the parcel of property and, concurrently, with an intent to hold the property in anticipation of an appreciation in the parcel's resale value**.  Accordingly, absent legislative intent to the contrary, we believe the plain and obvious meaning of the term "personal investment" includes real estate or residences.

<u>Cieri</u>, 80 Hawai`i at 67, 905 P.2d at 42 (emphasis added).  As with residences for purchase, residential rentals in Hawai`i are scarce and expensive, and the tenant commits money to gain occupancy of the residence.  The significant difference is: while

12

the residence may appreciate in value during a renter's tenancy, it is the owner – not the tenant – who benefits from the appreciation in value.  Plaintiffs have not presented any evidence that the rent they paid was "put . . . to use . . . in something offering profitable returns."  See id. (quoting The Random House College Dictionary, at 702 (Rev. ed. 1979)); see also Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc., 107 Hawai`i 423, 436, 114 P.3d 929, 942 (Ct. App. 2005) ("the concept of 'investment' includes an expectation of 'profitable returns'").  Nor is there any allegation in the Complaint that Plaintiffs had options to purchase their residences, nor have Plaintiffs represented that they can amend their Complaint to add such an allegation.  See Fernandez v. Mark Dev., Inc., No. 29331, 2011 WL 5089808, at *2 (Hawai`i Ct. App. Oct. 25, 2011) (stating that a real property lease may constitute a personal investment if the renter has an option to purchase the property and the rental payments are applied toward the option to purchase).  Under the Cieri analysis, Plaintiffs' rentals do not constitute the commission of money in a personal investment for purposes of a UDAP claim.

The closer question is whether Plaintiffs' rental of MCBH residences constituted the purchase of services.  As a general rule, the Hawai`i Intermediate Court of Appeals ("ICA") has held that:

13

> The rental of real property "involve[s] the transfer of a possessory interest in the real property for a period of time, in exchange for payment." Smith [v. Pink, No. 28690 (Hawai`i Ct. App. Apr. 15, 2010)] at 2;[6] see also Black's Law Dictionary 970 (9th ed. 2009) (defining a "lease" as "[a] contract by which the rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration . . .").  Fernandez's rental agreement is a transfer of real property for a specified term, and not a "service" under HRS § 480-1.

Fernandez, 2011 WL 5089808, at *2 (some alterations in

Fernandez); see also Takayama v. Zera, No. 27900, 2010 WL 973484,

at *5 (Hawai`i Ct. App. Mar. 18, 2010) ("Zera's lease was neither

a purchase of goods or services nor a personal investment." (some

citations omitted) (citing Black's Law Dictionary 1491 (9th ed.

2009) (defining "personal service" as "an economic service

involving either the intellectual or manual personal effort of an

individual, as opposed to a salable product of the person's

skill."))).[7]

    While Plaintiffs seek to distinguish the ICA cases as

factually distinguishable from the instant case, this argument

falls flat.  Plaintiffs attempt to characterize the use of real

---

    [6] The Smith v. Pink decision cited in Fernandez is available at 2010 Haw. App. LEXIS 150.

    [7] The Court acknowledges that Smith, Fernandez, and Takayama are unpublished cases.  However, they are persuasive as indications of how the Hawai`i Supreme Court is likely to resolve the question of whether the lease of real property or a residence constitutes the purchase of services.

estate agents and the large number of prospective tenants as transformative.  However, the use of real estate agents and the number of tenants who have similar leases are not relevant to whether the tenants have standing to pursue a UDAP claim because the leases constitute the purchase of services.  Plaintiffs contend their lease agreements constitute the purchase of services because Defendants also provided the following:

> renter's insurance policy; water; sewer; trash removal services; electricity; maintenance and repair of premises, including but not limited to cleaning services, decorating services, plumbing services, electrical services, HVAC maintenance, service of appliances, carpentry services, storm water maintenance, and grounds care; participation in the Deployed Dependent Program which assists families of deployed service members by providing services such as assistance with backyard yard maintenance, toy and furniture assembly and support peer groups; participation in the Family Leave Program in which service members and their families who are away for more than fourteen consecutive days can receive backyard lawn maintenance, weekly preventative home visits to determine no emergency situations have occurred and postal forwarding services; access to Community Centers for social events, classes, neighborhood projects and events; access to sport and recreation facilities; lawn fertilization and herbicide application services; and, handling of security concerns.

[Complaint at ¶ 161.d (footnote omitted).]  For purposes of the instant Motion, this Court assumes that Defendants provided these "services."  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007) ("a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations

contained in the complaint" (citations and internal quotation marks omitted)).

The district court addressed the same argument in Barber. The district court noted the ICA cases cited above – Takayama, 2010 WL 973484, at *5, and Smith, 2010 Haw. App. LEXIS 150, at *3 – and stated:

> The California Court of Appeals has directly examined Plaintiffs' argument regarding amenities that are included as a part of a tenant's lease. Freeman v. United Dominion Realty Trust, Inc., [2]008 WL 1838373, *9-10 (Cal. Ct. App. Cal. Rptr. 3d, May 6, 2008).
>
> In Freeman, the plaintiff argued that he had standing to bring a claim pursuant to the California consumer protection statute because his residential lease included an array of services include maintenance, lawn services, and a swimming pool. The California appeals court held that the services included in the lease "were merely incidents of the landlord-tenant relations; they did not change the fundamental nature of the lease." Id. at *10. The California Court of Appeal held that the services provided by the landlord as part of the lease did not provide the plaintiff with standing as a "consumer" to sue pursuant to the California Consumer Legal Remedies Act. Id.
>
> Just as in Freeman, the amenities included as part of Plaintiffs' leases are merely incidental to their leases and do not qualify as "services" to confer them with standing. The allegations in Plaintiffs' Second Amended Complaint do not involve the services discussed in Plaintiffs' Opposition. Plaintiffs' allegations concern the failure of Defendants to inform the tenants of the presence of pesticides in the soil before Plaintiffs signed their leases. Plaintiffs do not allege that the Defendants' failed to provide the amenities as part of their lease agreements.

16

Here, Plaintiffs have not purchased, attempted to purchase, or been solicited to purchase "services" from Defendants within the meaning of Haw. Rev. Stat. § 480-1. Plaintiffs do not have standing to bring a UDAP claim.

Barber v. Ohana Military Communities, LLC, Civil No. 14-00217 HG-KSC, 2015 WL 2250041, at *7-8 (D. Hawai`i May 12, 2015) (some citations omitted).

This Court agrees with the analysis in Freeman and Barber. The purported "services" described in paragraph 161.d of the Complaint were merely incidental to Plaintiffs' leases of MCBH residences. The fundamental nature of Plaintiffs' agreements was to lease residences, not to purchase the "services" – i.e., "amenities" as similar items were described in Barber. Further, the alleged actions and omissions in this case arise from soil contamination and construction dust issues, not from providing the services/amenities. Even accepting all of Plaintiffs' factual allegations as true, Plaintiffs have not purchased, have not attempted to purchase, and were not solicited to purchase "services." With this in mind, it is predicted that the Hawai`i Supreme Court will find that, under the circumstances of this case, Plaintiffs are not "consumers," as that term is defined in § 480-1. Plaintiffs thus fail to plead a plausible UDAP claim because they do not have standing to pursue such a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient

17

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955)).  Plaintiffs' UDAP claim must be dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

Nor is it possible for Plaintiffs to cure the defects in their UDAP claim by amendment and the dismissal is therefore with prejudice.  See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (brackets, citation, and internal quotation marks omitted)).  Defendants' Motion is granted as to Count IV.

## III. **Count IX - UMOC**

Although Plaintiffs cannot pursue their UDAP claim because they are not consumers, "[a]ny person may bring an action based on unfair methods of competition declared unlawful by this section."  Haw. Rev. Stat. § 480-2(e).  Count IX alleges that, because Defendants failed to disclose the soil contamination at MCBH to Plaintiffs, "Defendants engaged in unfair competition and enjoyed a competitive advantage over other real estate agents, private landlords, property management service providers, and insurance providers in the area who were competing for BAH dollars."  [Complaint at ¶ 142.]

18

Defendants argue that Count IX fails to state a plausible UMOC claim because Plaintiffs have not alleged an injury to their business or property which resulted from Defendants' allegedly anti-competitive conduct.  The Hawai`i Supreme Court has stated:

> Davis [v. Four Seasons Hotel Ltd.] explained that in order to state a cause of action and recover money damages [for a UMOC claim] under HRS § 480-2(e), a plaintiff must first satisfy the requirements of HRS § 480-13.  Davis, 122 Hawai`i [423,] 434, 228 P.3d [303,] 314 [(2010)] (citation omitted).  "HRS § 480-13(a) provides that, with limited exceptions, any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [chapter 480]: (1) [m]ay sue for damages . . . ; and (2) [m]ay bring proceedings to enjoin the unlawful practices[.]"  Id.  Davis noted, therefore, that a claim under HRS § 480-13 has three elements essential to recovery: (1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages.  Davis, 122 Hawai`i at 435, 228 P.3d at 315 (citations omitted). . . .
>
> With respect to the second element, Davis explained that this element includes two parts.  First, a plaintiff is required to allege an injury in fact to his or her "business or property." . . .
>
> Second, a plaintiff is required to allege the "nature of the competition." . . .  We explained that this means that the plaintiff must allege that "he or she was harmed as a result of actions of the defendant that negatively affect competition."  Davis, 122 Hawai`i at 438, 228 P.3d at 318.  The plaintiff was further required to allege "how [Defendants] conduct [would] negatively affect competition."  Davis, 122 Hawai`i at 437-38, 228 P.3d at 317-18.

Gurrobat v. HTH Corp., 133 Hawai`i 1, 21, 323 P.3d 792, 812 (2014) (some alterations in Gurrobat).

The Complaint is devoid of any assertions of injury to any business.  It does, however, assert injury to property: 1) Plaintiffs paid more to secure their MCBH residences; and 2) Plaintiffs will incur costs for "future medical monitoring of their health and the health of their family members." [Complaint at ¶ 143.]  The costs for medical monitoring because of alleged exposure to pesticides are actually damages for alleged personal injuries.  For purposes of a UMOC claim, personal injury does not constitute injury to property.  Whether Plaintiffs' increased costs associated with their lease constitutes an injury to property, however, is a closer question.

Many of the cases addressing UMOC claims involved injuries to the plaintiffs' business.  See, e.g., Gurrobat, 133 Hawai`i at 21, 323 P.3d at 812 ("Like the plaintiffs in Davis, Gurrobat met the first requirement, injury in fact to his or her 'business or property,' by alleging and later offering evidence that he did not receive his entire share of service charges due to him."); Hawaii Med. Ass'n ("HMA") v. Hawaii Med. Serv. Ass'n, Inc. ("HMSA"), 113 Hawai`i 77, 114, 148 P.3d 1179, 1216 (2006) (holding that HMA sufficiently alleged a UMOC injury "as a result of HMSA's unfair or deceptive practices, [which HMA also relied upon as the basis for its UMOC claim,] HMA was required to divert

substantial resources and time to deal with its members' problems created by HMSA's conduct").

In contrast, <u>Ai v. Frank Huff Agency, Ltd.</u> involved a promissory note that two individuals executed in favor of a collection agency to satisfy: a default judgment that the agency obtained against them; and other unliquidated debts that one of the individuals owed to two finance companies.  61 Haw. 607, 608-09, 607 P.2d 1304, 1307 (1980).  The amount of attorneys' fees the plaintiffs were required to pay in the event of a default exceeded the amount allowed under Haw. Rev. Stat. Chapter 443. Pursuant to Haw. Rev. Stat. § 443-47,[8] this violation of Chapter 443 constituted a violation of Haw. Rev. Stat. § 480-2.[9]  The state court ruled that the promissory note was void, pursuant to Haw. Rev. Stat. § 480-12, and awarded the plaintiffs damages and costs pursuant to Haw. Rev. Stat. § 480-13(a)(1).[10]  <u>Id.</u> at 609-

---

[8] At the time, § 443-47 stated: "A violation of this part by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2."  <u>Ai</u>, 61 Haw. at 610 n.5, 607 P.2d at 1308 n.5.

[9] The version of § 480-2 in effect at the time stated: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  <u>Ai</u>, 61 Haw. at 609 n.2, 607 P.2d at 1307 n.2.

[10] The version of § 480-12 in effect at the time stated, "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity," and § 480-13(a)(1) stated, *inter alia*, "[a]ny person who is injured in his business or property by reason of anything forbidden or declared unlawful

(continued...)

10, 1307-08.  The Hawai`i Supreme Court ultimately held that the plaintiffs could not recover damages under Chapter 480, but that they were entitled to a declaratory judgment that the attorneys' fees clause was void and unenforceable.  Id. at 621, 607 P.2d at 1313.  Significant to the matter at hand, the supreme court held that the plaintiffs sufficiently pled an injury to their property for § 480-13 standing purposes: "[I]t is unnecessary for plaintiffs to allege commercial or competitive injury in order for plaintiffs to have standing under HRS § 480-13; it is sufficient that plaintiffs allege that injury occurred to personal property through a payment of money wrongfully induced."  Id. at 614, 607 P.2d at 1310.

Ai was overruled in Robert's Hawai`i School Bus, Inc. v. Laupahoehoe Transportation Co., 91 Hawai`i 224, 982 P.2d 853 (1999).  There, the supreme court held that "there [wa]s no private claim for relief under HRS § 480-13 for unfair methods of competition in violation of HRS § 480-2."  Id. at 252, 982 P.2d at 881.  In noting that Ai involved a UDAP claim and not a UMOC claim, the supreme court restricted the application of Ai to UDAP claims.  Id. at 247, 982 P.2d at 876.  In 2002, the Hawai`i State Legislature amended § 480-2 by adding subsection (e), which remains unchanged.  In its examination of this amendment, the

---

[10](...continued)
by this chapter: (1) May sue for damages sustained by him."  Ai, 61 Haw. at 610 nn.6-7, 607 P.2d at 1308 nn.6-7.

supreme court has found it did not "'overrule[]' Robert's Hawai`i, . . . but instead simply provided a new right that did not previously exist."  HMA, 113 Hawai`i at 106-07, 148 P.3d at 1208-09.  The inapplicability of Ai to any UMOC claim was made clear in Davis:

> Ai's suggestion that allegations of "competitive injury" are unnecessary might seem inconsistent with the requirement in HMA that a plaintiff allege the "nature of the competition" in order to plead an unfair methods of competition claim under HRS § 480-2(e).  However, when this passage from Ai is viewed in the context of the facts the case, it is apparent that this court was explaining that injury to "business or property" means that a private plaintiff does not need to allege that he or she suffered an injury to his or her business property or in a business activity, but rather can allege that he or she suffered an injury to personal property.  Ai, 61 Haw. at 614, 607 P.2d at 1310.  Moreover, **Ai involved alleged unfair or deceptive acts or practices, not unfair methods of competition**, id. at 611, 607 P.2d at 1308, **and therefore this court did not address the requirements to properly plead an unfair methods of competition claim.**

122 Hawai`i at 436 n.25, 228 P.3d at 316 n.25 (emphases added).  Thus, any reliance on the Ai definition of injury "to personal property through a payment of money wrongfully induced" to support Plaintiffs' position that the alleged overpayment of rent and other related expenses is a sufficient injury for purposes of a UMOC claim is misplaced.

Hawai`i case law does not address the requirements necessary to plead a UMOC claim based on injury to a person's

property and therefore this Court must predict how the Hawai`i Supreme Court would decide the issue. Neither § 480-13, § 480-2, nor § 480-1 defines the term "property" for purposes of a UMOC injury. However, the statutes in Haw. Rev. Stat. Chapter 480 relate to the same subject matter, monopolies and restraint of trade, and Hawai`i law requires that they be read together. See Haw. Rev. Stat. § 1-16 ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another."). As previously discussed, the definition of a "consumer" includes "a natural person . . . who commits **money, property**, or services in a personal investment." § 480-1 (emphasis added). The Hawai`i Supreme Court has stated:

> It is a cardinal rule of statutory construction
> that courts are bound, if rational and
> practicable, to give effect to all parts of a
> statute, and that no clause, sentence, or word
> shall be construed as superfluous, void, or
> insignificant if a construction can be
> legitimately found which will give force to and
> preserve all the words of the statute.

Cty. of Kaua`i v. Hanalei River Holdings Ltd., 139 Hawai`i 511, 526, 394 P.3d 741, 756 (2017). To construe "money" as a form of "property" would violate this principle because it would render the term "money" superfluous. It is possible to find a legitimate construction that gives force to both terms – "property" and "money – in interpreting § 480-1. This Court predicts that the supreme court will interpret § 480-1 as

24

treating "money" and "property" as distinct.  Further, because § 480-1 must be read together with § 480-2 and § 480-13, it is predicted that the supreme court will hold that the payment of money does not constitute an injury to property in a UMOC claim.

Plaintiffs' UMOC claim is based upon the payment of increased rent and other expenses, which is insufficient to plead an injury to property for a UMOC claim.  Count IX therefore fails to allege a plausible UMOC claim, and it must be dismissed.[11]  As there is no indication in the record that Plaintiffs can amend their Complaint to allege an injury to property to support a UMOC claim, the dismissal of Count IX is with prejudice.  Defendants' Motion is granted as to Count IX.

## IV.  Count X - Trespass

Count X alleges that, "[d]uring the relevant time period, Defendants' conduct repeatedly caused the release of dust into the surrounding community and property in possession of Plaintiffs, which interfered with Plaintiffs' ability to use and enjoy their homes."  [Complaint at ¶ 146.]

"A trespass occurs when a person 'intentionally (a) enters land in the possession of the other, or causes a thing or third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a

---

[11]  In light of its conclusion that Plaintiffs have failed to plead the required injury to property, this Court does not reach Defendants' other arguments challenging Plaintiffs' UMOC claim.

duty to remove.'"  <u>Shayefar v. Kaleleiki</u>, Civ. No. 14-00322 HG-KSC, 2014 WL 5023498, at *5 (D. Hawai`i Oct. 7, 2014) (quoting <u>Freeland v. Cty. of Maui</u>, Civ. No. 11-00617 ACK-KSC, 2013 WL 6528831, *23 (D. Haw. Dec. 11, 2013) (quoting Restatement (Second) of Torts § 158))).  In contrast:

> A "nuisance" is defined as:
>
>> . . . that which unlawfully annoys or does damage to another, anything that works hurt, inconvenience, or damage, anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or physical occupation uncomfortable, and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights.
>
> <u>Littleton v. State</u>, 656 P.2d 1336, 1344 (Haw. 1982) (quoting 58 Am. Jur. 2d Nuisances § 1 at 555 (1971)).
>
> . . . A "nuisance" is an activity or condition that actively interferes with an individual's right to use and enjoy land.  <u>See Western Sunview Properties, LLC v. Federman</u>, 338 F. Supp. 2d 1106, 1116 (D. Haw. 2004) (A nuisance "has been defined as 'a nontrespassory invasion of another's interest in the private use and enjoyment of his land.'") (quoting <u>Layton v. Yankee Caithness Joint Venture</u>, 774 F. Supp. 576, 577 (D. Nev. 1991).  The "central idea of nuisance is the unreasonable invasion" of a property interest.  <u>Lussier v. San Lorenzo Valley Water Dist.</u>, 206 Cal. App. 3d 92, 100 (Cal. Ct. App. 1988).  A typical example of a nuisance is smoke or fumes that invade an individual's property from another location.  <u>E.g.</u>, <u>Olden C. LaFarge Corp.</u>, 203 F.R.D. 254 (E.D. Mich. 2001).  Other common examples include noxious odors and unreasonably loud noise.  <u>E.g.</u>, <u>Crea v. Crea</u>, 16 P.3d 922 (Id. 2000) (odor from hog farm could be a nuisance); <u>Schild v. Rubin</u>, 232 Cal. App. 3d 755 (Cal. Ct.

App. 1991) (excessive and inappropriate noise may constitute nuisance).

<u>Mitchell v. United States</u>, Civ. No. 11-00088 HG-KSC, 2011 WL 4048986, at *7 (D. Hawai`i Sept. 12, 2011).

Although Count X is titled "Trespass," [Complaint at pg. 29,] in actually it is a nuisance claim and duplicates Count XI. <u>Compare</u> <u>id.</u> at ¶ 146 <u>with</u> <u>id.</u> at ¶ 153 ("During the relevant time period, Defendants' conduct repeatedly caused the release of dust into the surrounding community and property in possession of Plaintiffs, which interfered with Plaintiffs' ability to use and enjoy their homes."). This Court therefore grants Defendants' Motion as to Count X, which is dismissed with prejudice.

## V.   <u>Remaining Claims</u>

This Court has dismissed Counts IV, IX, and X with prejudice. As to the remaining claims, Defendants argue that the claims are not sufficiently pled because Plaintiffs have not alleged: that each of them was impacted by contaminated soil and/or construction dust; and how each of them was injured as a result. Defendants contend that this is a requirement to establish constitutional standing. This Court agrees.

> Article III of the United States Constitution limits the power of the courts to the resolution of actual "Cases" and "Controversies." U.S. Const., art. III, § 2; <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982). "[T]he irreducible

27

> constitutional minimum of standing contains three elements": (1) injury in fact, (2) causation, and (3) redressability.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  Thus, the party seeking to establish standing must show the "actual or imminent" "invasion of a legally protected interest" that is "fairly traceable to the challenged action" and is "likely . . . to be redressed by a favorable decision."  Id. at 560-61, 112 S. Ct. 2130 (emphasis added) (alterations, citations, and quotation marks omitted).  The party seeking to establish jurisdiction . . . bears the burden of demonstrating standing.  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006); Lujan, 504 U.S. at 561, 112 S. Ct. 2130. . . .

Ass'n of Pub. Agency Customers v. Bonneville Power Admin., 733 F.3d 939, 969-70 (9th Cir. 2013) (emphasis omitted).  As to every remaining claim, each Plaintiff must plead sufficient factual content to draw the reasonable inference that he or she suffered an actual injury in fact – or faces an imminent injury – that is fairly traceable to Defendants' alleged actions and omissions, and that is likely to be redressed by a judgment in his or her favor.  See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955)).

Plaintiffs have pled some factual allegations regarding soil contamination and construction dust at MCBH in general, but they have not pled sufficient factual allegations to allow this

Court to draw the reasonable inference that each Plaintiff has suffered, or is imminently facing, an actionable injury.  This Court therefore concludes that Counts I, II, III, V, VI, VII, VIII, and XI fail to state plausible claims for relief because Plaintiffs have not pled sufficient allegations regarding their standing to pursue these claims.  However, this Court also concludes that it is possible for Plaintiffs to cure this defect in their claims.  The Motion is granted in part and denied in part as to Counts I, II, III, V, VI, VII, VIII, and XI.  Those claims are dismissed without prejudice.[12]

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss, filed October 20, 2016, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED insofar as: 1) all of the claims in Plaintiffs' Complaint, filed in state court on September 14, 2016, are DISMISSED; and 2) the dismissal of Plaintiffs' unfair and deceptive acts or practices claim (Count IV), unfair methods of competition claim (Count IX), and trespass claim (Count X) is WITH PREJUDICE.  The Motion is DENIED

---

[12] This Court declines to address Defendants' other challenges to Plaintiffs' remaining claims at this time because the amendments that Plaintiffs may make to address the standing defect in their claims may affect this Court's analysis of the other issues.  Defendants may revisit those issues in a new dispositive motion after Plaintiffs file their amended complaint.

insofar as the dismissal of all of Plaintiffs' other claims is WITHOUT PREJUDICE.

Plaintiffs shall file their amended complaint by **September 6, 2017**.  Plaintiffs do not have leave to add new parties, claims, or theories of liability.  If they wish to do so, they must comply with Fed. R. Civ. P. 15(a)(2) and the Rule 16 Scheduling Order, [filed 4/14/17 (dkt. no. 56)].

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 1, 2017.



                      /s/ Leslie E. Kobayashi
                      Leslie E. Kobayashi
                      United States District Judge

KENNETH LAKE, ET AL. VS. OHANA MILITARY COMMUNITIES, LLC, ET AL; CIVIL 16-00555 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS