**SMITH | LAW**
P. KYLE SMITH           9533
970 N. Kalaheo, Suite A301
Kailua, HI 96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE     5857
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Plaintiffs Kenneth Lake, Crystal Lake, Harold Bean, Melinda Bean, Kyle Pahona, Estel Pahona, Timothy Moseley, Ashley Moseley, Ryan Wilson, and Heather Wilson<br><br>              Plaintiffs,<br><br>vs.<br><br>Ohana Military Communities, LLC, Forest City Residential Management, Inc., and DOE Defendants 1-10,<br><br>              Defendants. | Civ. No.  1:16-CV-00555 LEK-KJM<br><br><br>**PLAINTIFFS'**<br>**FIRST AMENDED COMPLAINT;**<br>**DEMAND FOR JURY TRIAL**<br><br><br><br>JUDGE LESLIE E. KOBAYASHI<br><br>No Trial Date Set |

Plaintiffs allege the following against Ohana Military Communities, LLC and Forest City Residential Management, Inc.:

## I.

## JURISDICTION AND VENUE[1]

1) This Court has jurisdiction and venue over the above Defendants under Hawaii Revised Statutes § 634-35, because the causes of action arise as the result of Defendants' business transactions within this state, Defendants' commission of alleged tortious acts and injuries within this state, and the Defendants' and Plaintiffs' use and possession of real property within this state. Defendants are subject to the jurisdiction of this Court because they reside and conduct business in this Circuit.

2) Further, this Court has jurisdiction and venue under the terms of Defendants' lease agreements with Plaintiffs, which agree that Lease and contractual relationship between the parties will be construed exclusively in accordance with, and shall be exclusively governed by the substantive laws of the State of

---

[1] Note that this Court has asserted federal enclave jurisdiction and venue over this matter pursuant to its Order Denying Remand [ECF 63]. Plaintiffs' original jurisdiction and venue assertions are included within this Amended Complaint, however, for consistency and to clarify that Plaintiffs intend no waiver of potential argument for appeal by the filing of this Amended Complaint.

SMITH|LAW
REVERE & ASSOCIATES

Hawaii, including but not limited to Hawaii State Revised Statutes, chapter 521, and the common law interpreting those statutes.

3)   This Court has subject matter jurisdiction over this action under Hawai`i Revised Statute § 603-21.5.

4)   Venue is proper before this Court under Hawai`i Revised Statute § 603-36.

## II.

## PARTIES

5)   Plaintiffs are military families who leased residential family housing at Marine Corp Base Hawaii (MCBH) in Kaneohe, Oahu, after 2006 from Defendants:

6)   Kenneth Lake, Jr. and Crystal Lake are former tenants at MCBH from approximately June 1, 2012, through December 20, 2015, at 1910 Campion Drive.

7)   Harold and Melinda Bean are former tenants at MCBH from approximately August 2008 to January 2010 at 6588 B Shimabukuro Place, and from January 2010 to January 2012 at 6223 A Castaneda St.

8)   Kyle and Estel Pahona are present tenants at MCBH from approximately November 2013 to November 2016 at 2029 Ulupau Loop.

9)   Timothy and Ashley Moseley are former tenants at MCBH: a) at 1797A South Lawrence Rd. from approximately July 2008 to June 2009; b) 3141

3

Naniha Loop from approximately September 2009 to March 2012; and c) at

6620A Cochran St. from approximately March 2012 to November 2012.

10) Ryan and Heather Wilson are former tenants MCBH from approximately

2006 to 2015 at 6314 B Gier Street.

11) Upon information and belief, Defendant Ohana Military Communities, LCC

("Ohana MC") is and has been at all relevant times a Hawaii corporation,

having its principal place of business in the City and County of Honolulu,

State of Hawaii.

12) Upon information and belief, Defendant Forest City Residential Management,

Inc., ("Forest City RM") is and has been at all relevant times a foreign

corporation doing business in Hawaii and having its principal place of

business in Cleveland, Ohio.

13) Plaintiffs allege that Ohana MC and Forest City RM are joint tortfeasors, co-

conspirators, alter egos, agents of the other, co-venturers, and engaged in the

joint-enterprise of developing privatized military housing at MCBH,

marketing and sales of residential leases, sales of renter's insurance policies,

providing property management and maintenance services, as well as the

conduct and acts alleged herein.

14) Plaintiffs have reviewed records that were made available to them in order to

ascertain the true and full names and identities of all defendants in this action,

SMITH|LAW
REVERE & ASSOCIATES

but no further knowledge or information regarding the parties responsible is available at this time and Plaintiffs are unable to ascertain the identity of the defendants in this action designated as DOE DEFENDANTS 1-10 ("Doe Defendants"). Doe Defendants are sued herein under fictitious names for the reason that their true names and identities are unknown to Plaintiffs except that they may be connected in some manner with Defendants and may be agents, attorneys, servants, employees, employers, representatives, co-venturers, co-conspirators, associates, or independent contractors of Defendants and/or were in some manner responsible for the injuries or damages to Plaintiff and their true names, identities, capacities, activities and responsibilities are presently unknown to Plaintiff or their attorneys.

### III.

### FACTUAL ALLEGATIONS

***Military Housing Privatization Initiative***

15) In 1996, under the provisions of the Military Housing Privatization Initiative (MHPI), the United States Congress authorized legislation to privatize military housing whereby private companies were allowed to own and manage housing on military bases.

Smith|Law
Revere & Associates

a. The MHPI seeks to attract private sector financing, expertise, and innovation to provide necessary housing faster and more efficiently than traditional military housing construction procedures allow;

b. Private developers who are selected in a competitive process to own, maintain and operate on-base family housing via a fifty-year ground lease.

c. The MHPI does <u>not</u> guarantee that service members will elect to live in on-base, privatized housing created under the MHPI.

d. Private developers and property managers are instead encouraged to "build/renovate housing units where service members will choose to live."[2]

e. Uniformed service members who do not receive government housing are provided with a Basic Allowance for Housing (BAH) and can spend their BAH to purchase private housing either "off-base" or "on-base," which means that developers, real estate agents, property lessors and property managers compete to acquire service members' BAH dollars.

---

[2] Military Housing Privatization, FAQs, Office of the Deputy Undersecretary of Defense Installations and Environment, http://www.acq.osd.mil/housing/faqs.htm#2.

Smith|Law
Revere & Associates

    f. On-base privatized housing expressly targets junior enlisted personnel who frequently cannot afford privatized housing within a reasonable commuting distance of base.[3]

16) Ohana Military Communities, LLC ("Ohana MC") was created to renovate and construct new housing at Marine Corp Base Hawaii ("MCBH").

17) Forest City Residential Management, Inc. ("Forest City RM") acts as Ohana MC's agent for the lease of residential housing to military families on MCBH during all relevant times and is authorized to manage residential housing at MCBH on Ohana MC's behalf under the terms of Ohana MC's lease with military families.[4]

    a. Forest City RM relies upon and employs licensed Hawaii real estate agents to sell its properties to potential MCBH tenants.

    b. Ohana MC, by and through its agent Forest City RM, provides services to military families at MCBH related to the marketing, sale, and management of residential leases, sale of renter's insurance policies, and provision of property management and maintenance programs.

---

[3] *Id.*

[4] Ohana MC Exemplar Lease Agreement at 2, ¶1 ("The Premises are managed by Forest City Residential Management, Inc. ('Agent') …. Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner.").

SMITH|LAW
REVERE & ASSOCIATES

c.  Ohana MC, by and through its agent Forest City RM, markets and advertises its residential leases, rental insurance, and property management and maintenance services at MCBH.

d.  Services provided by Defendants include renter's insurance policy; water; sewer; trash removal services; electricity; maintenance and repair of premises, including but not limited to cleaning services, decorating services, plumbing services, electrical services, HVAC maintenance, service of appliances, carpentry services, storm water maintenance, and grounds care; participation in the Deployed Dependent Program which assists families of deployed service members by providing services such as assistance with backyard yard maintenance, toy and furniture assembly and support peer groups;  participation in the Family Leave Program in which service members and their families who are away for more than fourteen consecutive days can receive backyard lawn maintenance, weekly preventative home visits to determine no emergency situations have occurred and postal forwarding services; access to Community Centers for social events, classes, neighborhood projects and events[5];

---

[5] Forest City Residential Community Handbook for Marine Corps Neighborhoods, at 8, attached hereto as **Exhibit 1.**

8

access to sport and recreation facilities; lawn fertilization and herbicide application services; and, handling of security concerns.

18) After Defendants took control of military housing at MCBH in approximately 2006, Defendants subsequently entered several thousand leases with military families for residential housing at MCBH to benefit military families.

19) Plaintiffs are present and former residents and occupants who leased residential housing at MCBH after 2006 from Ohana MC.

20) Under the terms of their leases, Ohana MC, Forest City RM, and tenants agree:

    a. Military families will pay monthly rent equal to their Basic Allowance for Military Housing ("BAH");[6]

    b. Ohana MC will provide safe and habitable housing;[7] and

    c. To mediate any disputes or claim between them arising out of this Lease.[8]

---

[6] Ohana MC Exemplar Lease Agreement at 2, ¶3 ("Resident agrees to pay monthly Rent equal to the Basic Allowance for Military Housing at the 'with dependent' rate (the 'BAH') at the Resident's duty station of the pay grade of the Resident service member."). Note that assignment to privatized housing is voluntary. In other words, service members have the ability to use their BAH as they see fit; i.e. rent in the civilian market or purchase real estate in the civilian market. BAH is also increased for military service members with families in order to pay for housing for military families.

[7] *Id.* at 5, ¶12 ("Owner is responsible … **for ensuring that the Premises are safe and habitable**.") (emphasis added).

[8] *Id.* at 10, ¶34.

21) After assuming control of MCBH residential housing, Ohana MC began to lease newly and previously constructed residential housing to military families in approximately 2006. Upon information and belief, older residential housing at MCBH contained asbestos, lead-based paint, extensive mold infestation, and other toxins. During this time Ohana MC began demolishing portions of the older residential housing to build new residential units for future lease, which has occurred at MCBH from approximately 2006 to the present.

22) <u>Before</u> taking control of MCBH housing, Defendants were warned by Metcalf Construction, which was the contractor originally hired by the Department of the Navy to carry out demolition and construction of military housing at MCBH, that MCBH soils had been found that were contaminated with pesticides including chlordane, heptachlor, and heptachlor epoxide, and that <u>all</u> contaminated topsoil should be removed in addition to other measures.[9]

23) Thus, *before* taking over MCBH residential housing, Defendants were aware that chlordane and other pesticide levels were many times higher than the EPA's Tier 1 environmental action levels ("EAL") and that chemical

---

[9] Chlordane was banned by the EPA in 1988 and is classified as a Group B2 carcinogen by the EPA. Similarly, heptachlor was banned by the EPA in 1974 and is listed as a Group B2 carcinogen.

SMITH|LAW
REVERE & ASSOCIATES

contamination at MCBH housing was widespread and needed to be remediated because of the increased health risks for military families at MCBH.

24) Despite these warnings, Defendants did <u>not</u> disclose the presence of pesticide-contaminated soils to military families before marketing and selling residential leases, renter's insurance, and property management and maintenance services at MCBH.

25) After learning of the presence of pesticide-contaminated soils, Ohana MC investigated, conducted additional testing, and thereafter *confirmed* the presence of pervasive pesticide contamination at MCBH.

26) Because of consistent positive test results from MCBH neighborhoods, Ohana MC stopped testing and concluded that *all neighborhoods at MCBH* should be assumed to contain pesticide impacted soils beneath all existing foundations and all surrounding perimeters.

27) In addition to heptachlor, chlordane, and heptachlor epoxide levels in excess of EPA Tier 1 and Tier 2 EALs, Defendants were also aware of chemical contamination for aldrin, dieldrin, and endrin at MCBH in excess of Tier 1 and Tier 2 EALs, similarly failed to provide warning of dangers associated with these risks to military families.

11

28) After learning of the presence of pesticide-contaminated soils at MCBH, Defendants created a Pesticide Soils Management Plan (the "Plan") with input from the Hawaii Department of Health (HDOH).[10]

   a. Under the Plan, Tier 2 EALs were developed for the pesticides at issue that allowed soil contamination levels above the Tier 1 EALs. These higher levels are justified based on the flawed assumption that military families would not live at MCBH longer than 6 years (i.e. two 3-year tours of duty at MCBH).

   b. Importantly, these higher Tier 2 EALs mean that military families are exposed to higher excess cancer/non-cancer risks of at least "one in one-hundred thousand" (10-5) rather than the regular Tier 1 level of less than a "one-in-a-million" excess risk.

   c. Additionally, Defendants Plan does not contemplate additional risk increases from exposure to airborne contamination in the form of contaminated soil and dust. Stated different, Defendants exposure assessment is a conservative assessment based solely upon routine ingestion of contaminated soil at MCBH.

29) Further, the Plan:

---

[10] *See* February 2008 Pesticide Soil Management Plan, attached hereto as **Exhibit 2.**

a. Confirmed the presence of pesticide-contaminated soils at MCBH;

b. Assumed all neighborhoods contained pesticide-contaminated soils beneath all existing home foundations and surrounding perimeters;

c. Recommended specific remediation practices to address pesticide contaminated soils such as confirming that "no visible dust" should occur during demolition and construction because of the danger of pesticide-contaminated soils;

d. Claimed that detailed maps would be kept and made available to the Department of the Navy, MCBH property management, and the HDOH detailing where pesticide-contaminated soils had been found and addressed; and

e. Confirmed that written notification would be provided to residents anywhere they may contact pesticide-contaminated soils.

30) In spite of specific knowledge of chemical contamination of MCBH residential housing at levels many times above both Tier 1 and Tier 2 EALs, Defendants took over existing leases and entered new leases with military families without disclosure to these families that pesticide-contaminated soils had been tested *and confirmed* at MCBH.

31) Defendants also did not inform military families at MCBH of the Plan, did not tell military families that Defendants had agreed to accept pesticide-

13

contaminated soils above Tier 1 EALs at MCBH, did not inform military families that pesticide contaminated soils above Tier 2 EAL levels had been confirmed at MCBH, and did not inform military families that pesticide contaminated soils at MCBH would pose a higher excess risk of cancer and non-cancer outcomes for military families residing at MCBH.

32) Defendants also failed to follow their own Plan. For example:

    a. Rather than notifying residents that pesticide-contaminated soils had been confirmed at MCBH, Defendants' Residential Community Handbook for Marine Corps Neighborhoods ("Community Handbook") – which was provided to residents *after* they entered leases with Defendants and incorporated within the Lease[11] –contained only a non-specific reference that chlordane and other pesticides "may be found" throughout the United States while expressly representing it is safe for families to work, play, and garden in their yards:

> *Chlordane was one of the most common pesticides applied to the soil around homes and businesses throughout the United States for protection against termites from 1948 to 1988. Other pesticides used in and around housing to prevent insect infestation and disease outbreak have also been banned. Although chlordane and*

---

[11] Ohana MC Exemplar Lease Agreement at 4, ¶11 ("A. Resident agrees to comply with the Community Handbook delivered to Resident…B. Resident has been provided with and acknowledges receipt of a copy of the Community Handbook, which may be updated from time to time.").

SMITH|LAW
REVERE & ASSOCIATES

*other pesticides are no longer used, they may be found in soils under and around housing constructed in both civilian and military communities. Families can safely work and play in their yards; however, we recommend residents use prudent practices by thoroughly washing their hands after direct soil contact and washing all plants and vegetables grown on-site before consuming.*[12]

b. Similarly, while the Plan mandated that "no visible dust" should occur, substantial fugitive dust occurred at MCBH throughout the demolition of old housing and the construction of new housing. When military families repeatedly complained about the excessive dust, Defendants did not disclose that pesticide-contaminated soils had been confirmed at MCBH. Instead, Defendants told military families there was no danger.

c. And while the Plan claimed that detailed maps would be kept and made available to the Department of the Navy, MCBH property management, and the HDOH that detailed where pesticide-contaminated soils had been found and addressed, such maps were not provided until complaints were ultimately brought by Plaintiffs.

33) Since at least 2006, Defendants have systematically failed to warn military families of pesticide contamination at MCBH and knowingly and intentionally exposed military families at MCBH to unsafe conditions

---

[12] Ex. 1, Forest City Residential Community Handbook Marine Corps Neighborhoods, at 14.

SMITH|LAW
REVERE & ASSOCIATES

including higher rates of cancer and other adverse health outcomes without disclosing these risks to military families or taking sufficient steps to protect military families from such risks.

34) After military families discovered Defendants' failure to disclose the presence of pesticide-contaminated soils, Plaintiffs requested Defendants to mediate with them to address concerns about pesticide-contaminated soils at MCBH under the terms of their lease. The lease mediation provision states:

> **Mediation**. Owner and Resident agree to mediate any dispute or claim arising between them out of this Lease, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. The parties agree to use a mediator selected from the mediation list incorporated in the Community Handbook. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to make reasonable efforts to resolve the matter through mediation, or refuses to mediate in good faith after a request has been made, then that party shall not be entitled to recover attorney's fees even if that party eventually prevails in the court proceeding.[13]

35) Specifically, Plaintiffs demanded for Ohana MC to participate in mediation pursuant to the mediation clause found within their lease agreements with Ohana MC to address Ohana MC's intentional failure to disclose chemical contamination at MCBH and Ohana MC's failure to provide safe and habitable housing to military families from 2005 to the present.

---

[13] *See* Ohana MC Exemplar Lease Agreement.

16

SMITH|LAW
REVERE & ASSOCIATES

36)  In response, however, Ohana MC made clear that it would not individually mediate with Plaintiffs because of the number of military families who have brought claims against it.

***Individual Experiences and Impact to Plaintiffs and their Families Living at MCBH***

37)  While living at MCBH, Plaintiffs and their families routinely visited other neighborhoods at MCBH every day in the course of their normal responsibilities, which included routine travel by foot, bike, and car between MCBH neighborhoods on their way to various destinations (e.g., school, friend's homes, playgrounds, bus stop, MCX, etc.).

38)  As part of their daily lives, Plaintiffs lived within and/or visited neighborhoods on a weekly basis that MCBH now admits contained homes and soils contaminated by pesticides and other contaminants (asbestos, lead-based paint, extensive mold infestation, and other toxins). Therefore, even when individual Plaintiffs who did not live within "contaminated" neighborhood still visited contaminated neighborhoods and were exposed to construction dust on a regular basis as "clean" homes were cited near to Defendants' alleged remediation efforts.

17

39) While living at MCBH, Plaintiffs observed and were routinely exposed to dust and dirt from the demolition and construction of homes at MCBH. For example:

   a. The Moseley family lived in 1 of approximately 5 or homes left in a demolition area from July 2008 - June 2009 and later moved into a construction area in September 2009 and lived in one of the only completed homes with construction and demolition ongoing almost the entire time until they moved again in March 2012.

   b. The Bean family routinely experienced construction dust from 2008 to 2012 on their own property, in their neighborhood, and in adjacent neighborhoods from 2008 to 2012.

   c. The Wilson family experienced construction dust on their own property, in their neighborhood, and in adjacent neighborhoods including suffering from dust in their cars and on their possessions through construction phases of their neighborhood.

   d. The Pahona family experienced construction dust in adjacent neighborhoods when they would visit friends and go about other routine duties at the base related to their families.

   e. The Lake family experienced construction dust on a nearly daily basis in adjacent neighborhoods especially when the winds were strong.

18

40) All Plaintiffs' families personally observed construction dust blowing from MCBH construction sites into adjacent neighborhoods and onto their personal persons and property while they traveled by foot, car, or bike around MCBH.

41) All Plaintiffs' families personally experienced construction dust settling on their cars or other possessions on a weekly basis while living at MCBH, which required the Plaintiffs' families to spend additional time cleaning of the personal and real property. For

42) All Plaintiffs' families personally experienced construction dust settling on their windows and/or home exteriors that required substantial additional cleaning.

43) All Plaintiffs' families recall construction dust penetrating into their homes to settling on window sills, counters, floors, etc. that also required additional cleaning. Two examples include, but are not limited to, the: a) the Moseley family's first home had no air conditioning, which meant they had to clean for hours every day because of the dust impacts; and b) the Lake family forced to individually re-wash dinnerware before using it because of the substantial amount of dust.

44) To deal with the dust impacts, all families purchased additional cleaning and air filtration supplies (e.g. wet mops, vacuums, air filters, air purifiers, etc.).

19

45) The constant presence of construction dust prevented all Plaintiffs' families from using and enjoying their homes as much as they would have normally, including using their yards/lanais less keeping their windows/doors shut to keep air-conditioning running rather than enjoying the open air. The environmental conditions at MCBH also prevented Plaintiffs from using and enjoying their MCBH community as much as they otherwise should have.

46) At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

47) At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

48) At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

49) At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

SMITH|LAW
REVERE & ASSOCIATES

50) At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

51) Because of Defendants' failure to disclose widespread environmental contamination at MCBH, all Plaintiffs allowed their families and pets to come into contact with dust, dirt, and soils in the yards of homes at MCBH (at their own homes and within contaminated neighborhoods) without taking additional precautions.

52) Had Plaintiffs been told about the presence of widespread pesticide contamination and contaminated construction dust at MCBH they would not have chosen MCBH housing for their family and/or would have taken additional steps to have protected their family.

53) Had Plaintiffs been told that Ohana MC was engaged in a community-wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH they would not have chosen MCBH housing for their family.

54) Had Plaintiffs been told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods at MCBH they would not have chosen MCBH housing for their family.

21

Smith|Law
Revere & Associates

55) Had Plaintiffs been told that Defendants were exposing Plaintiffs, Plaintiffs' families, and other military families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will they would not have chosen MCBH housing for their family.

56) All Plaintiffs contend they have been overcharged for housing at MCBH because of Defendants' failure to disclose pesticide contamination, failure to control contaminated construction dust at MCBH, and failure to disclose its alleged pesticide "management" plan.

57) All Plaintiffs are extremely concerned, fearful, and worried that they and their families have been exposed to dangerous chemicals and higher rates of adverse health outcomes while living at MCBH for themselves and their families because of Defendants' failure to disclose and failure to protect their families.

58) All Plaintiffs feel that they have not received the MCBH community they were promised by Defendants and that Defendants': a) failure to disclose widespread pesticide contamination at MCBH; b) failure to warn to warn Plaintiffs of the risks they and their families were exposed to; and c) failure to prevent contaminated soils, dust, and dirt from contacting Plaintiffs and their families, have made their Plaintiffs' lives, both while living at MCBH and after, less enjoyable.

Smith|Law
Revere & Associates

## <u>FIRST CLAIM FOR RELIEF</u>
### (Breach of Contract – Ohana MC)

59)  Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

60)  Valid contracts were entered between Plaintiffs and Ohana MC for the lease of residential housing on MCBH.

   a.  Under its lease documents, Ohana MC assumes responsibility to meet the housing needs of military families at MCBH and defines military service members who sign the lease as "Residents" and spouses, children, and parents as "Occupants."

   b.  Only military service members who live with a dependent (spouse, child, or parent) are eligible to lease MCBH family housing from Ohana MC.

   c.  Military families who live at MCBH are therefore intended beneficiaries of the lease agreements entered into between service members and Ohana MC as Ohana MC assumes responsibility to meet the housing needs of military families.

61)  Under the terms of their lease contracts, Plaintiffs agreed to pay rent equal to their BAH in exchange for safe and habitable residential housing at MCBH for their families and agreed the parties' respective lease obligations and responsibilities would be construed exclusively under the substantive laws of

the State of Hawaii, including, but not limited to, Hawaii Revised Statutes Chapter 521 and the common law interpreting those statutes.[14]

62) Under the terms of their leases and Hawaii law, Ohana MC has breached its lease agreements with Plaintiffs.

63) Specifically, Ohana MC failed to:

   a.  Disclose the presence, nature, or extent of pesticide-contaminated soils at MCBH;

   b.  Provide safe and habitable housing;

   c.  Provide a safe and habitable community at MCBH; and

   d.  Disclose or fully implement its Pesticide Soil Management Plan;

64) Because of Ohana MC's breach of contract, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

65) Because of Defendants' breach, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

---

[14] Military service members receive additional BAH (and cost of living adjustments) to pay for housing for their dependents. Ohana MC provides housing services for military families at MCBH and requires military service members to pay their full BAH – for both themselves and their dependents – as rent in exchange for the provision of housing services.

SMITH|LAW
REVERE & ASSOCIATES

a. Economic –

    i.  Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

    ii.  Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii.  Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic –

    i.  Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii.  Loss of use and enjoyment in their homes and community;

    iii.  Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv.  Loss of aesthetic and recreational satisfaction in their community.

66) Under the terms of their lease, Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

Smith|Law
Revere & Associates

67) As a proximate and legal result of Ohana MC's breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Warranty of Habitability – Ohana MC)

68) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

69) Ohana MC owes a duty to Plaintiffs to provide safe and healthy residential housing for military families.

70) Under the terms of their lease contracts, Plaintiffs agreed to pay rent in exchange for safe and healthy residential housing.

71) Ohana MC breached its duty to provide safe and healthy residential housing.

72) As explained above, Ohana MC failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. For example:

    a.  At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

b. At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

c. At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

d. At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

e. At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

73) Instead, Defendants failed to disclose the risks and failed to protect Plaintiffs and their families' health while living at MCBH.

27

74) Because of Defendants' breach, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

a. Economic–

    i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

    ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic–

    i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii. Loss of use and enjoyment in their homes and community;

    iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

iv.  Loss of aesthetic and recreational satisfaction in their community.

75)  As a proximate and legal result of Ohana MC's breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

### THIRD CLAIM FOR RELIEF
**(Violation of Hawaii Revised Statute Chapter 521 –**
**Landlord Tenant Code –Defendants)**

76)  Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

77)  Hawaii Revised Statute §521-10 imposes upon landlords an obligation of good faith in the performance of their obligations under the lease.

78)  Hawaii Revised Statute §521-42(a)(1) obligates Defendants to supply housing that complies with applicable building and housing laws materially affecting health and safety.

79)  Despite their obligation to provide healthy and safe housing to military families,[15] Defendants intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health

---

[15] *See* Hawaii Landlord Tenant Code Handbook, Landlord Obligations, at 15 ("Provide safe and healthy premises as required by law. Section 42(a)(1) and (2)").

SMITH|LAW
REVERE & ASSOCIATES

outcomes without their knowledge and against their will in addition to knowing violation of Defendants' own Pesticide Soils Management Plan, which included both pesticide contaminated neighborhoods and construction dust at MCBH.

80) As described above, despite their obligation to act in good faith, Defendants failed to disclose and failed to protect Plaintiffs and their families from widespread pesticide contamination at MCBH.

81) Defendants therefore violated the Hawaii Landlord Tenant Code and Plaintiffs are entitled to all rights and remedies afforded tenants under Chapter 521, which includes their reasonable attorneys' fees and costs.

82) Because of Defendants' violation of Chapter 521 of the Hawaii Revised Statutes, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

   a. Economic–

      i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

Smith|Law
Revere & Associates

    ii.  Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii.  Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

  b.  Non-economic–

    i.  Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii.  Loss of use and enjoyment in their homes and community;

    iii.  Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv.  Loss of aesthetic and recreational satisfaction in their community.

83)  As a proximate and legal result of Defendants' breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

31

## <u>FOURTH CLAIM FOR RELIEF</u>[16]
### (Unfair & Deceptive Trade Practices - Defendants)

84) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

85) Hawaii Revised Statutes § 480-2(a) provides, in relevant part: "[U]nfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."[17]

    a. The sale of residential leases by licensed real estate agents, the sale of insurance policies, and the sale of property management and maintenance services by professional residential property management companies all constitute "any trade or commerce" within the meaning of Hawaii Revised Statutes chapter 480.

86) Plaintiffs are "consumers" under Hawaii Revised Statute 480-1 who have purchased goods or services or who have personally invested their resources to lease residential housing from Defendants.[18]

---

[16] This Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [ECF 63] dismissed Plaintiffs' Fourth Claim (Unfair and Deceptive Trade Practices) with prejudice. Plaintiffs' restate this claim unchanged within this Amended Complaint solely for consistency of the claim numbering and to clarify that Plaintiffs intend no waiver of any potential argument for appeal by the filing of this Amended Complaint. Plaintiffs do not attempt to re-allege this claim by including it within their Amended Complaint.

[17] HAW. REV. STAT. §480-2.

a. Hawaii Revised Statutes § 480-1 further clarifies that the term "purchase" or "buy" includes "contract to buy", **"lease", "contract to lease"**, "license" and "contract to license".[19]

b. The purchase of "leases" from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes Chapter 480.

c. The purchase of renter's insurance policies from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes chapter 480.

d. The purchase of professional residential property management services falls within conduct regulated by Hawaii Revised Statutes chapter 480.

87) Defendants' conduct in using licensed Hawaii real estate agents to market and sell residential leases, renter's insurance policies, and a wide array of property management and maintenance services – many of which address safety and special needs of military families – at MCBH without disclosing the presence, nature, and extent of pesticide-contamination at MCBH constitutes an unfair or deceptive act and practice in the conduct of trade and commerce that had the tendency to mislead potential tenants.

---

[18] HAW. REV. STAT. § 480-1.

[19] *Id.*

SMITH|LAW
REVERE & ASSOCIATES

    a. For example, Defendants' practice of expressly representing that Defendants "ensured" MCBH housing was "safe and habitable" and that Defendants would provide "exceptional service" constitutes an unfair or deceptive act and practice in the conduct of trade and commerce that had the tendency to mislead potential purchasers.[20]

    b. Similarly, Defendants use of a Community Handbook that failed to disclose the presence and risk of pesticide-contaminated soils at MCBH was an unfair and deceptive trade practice.

88) To entice military families to enter leases with Defendants at MCBH, Defendants did not disclose that pesticide-contaminated soils had been confirmed at MCBH and that Defendants had decided to accept pesticide-contaminated soils at MCBH above Tier 1 EALs.

89) Further, after entering leases with Plaintiffs, Defendants asserted it was safe for families to work and play in their yards although they now admit that children and pets should <u>not</u> be allowed to play in the yards near old house foundations and that families should <u>not</u> grow fruits or vegetables in the yards near old house foundations.

---

[20] *See* Community Handbook at 1.

Smith|Law
Revere & Associates

90) Additionally, despite actual knowledge that pesticide-contaminated soils had been confirmed at MCBH, Defendants only provided a cursory statement that chlordane "may" be found in the United States.

91) Defendants' unfair or deceptive trade practices had a tendency to mislead Plaintiffs into purchasing residential leases, renter's insurance policies and property management and maintenance services at MCBH.

92) Because of Defendants' unfair and deceptive trade practices, Plaintiffs have incurred expenses and other special damages in an amount to be proven at trial.

93) Plaintiffs have sustained damages as a result of Defendants' unfair or deceptive trade practices, which includes the overpayment for rent, real estate sales commissions, property management and maintenance services and emotional distress.

94) As a proximate and legal result of Defendants' unfair and deceptive trade practices, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

SMITH|LAW
REVERE & ASSOCIATES

## FIFTH CLAIM FOR RELIEF
### (Negligent Failure to Warn – Defendants)

95) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

96) Defendants have an obligation to provide safe and healthy housing for residents and a duty to warn Plaintiffs of risks.

97) Despite actual knowledge of the presence of pesticide-contaminated soils at MCBH and related health risks, however, Defendants provided no warning to Plaintiffs or their families and instead intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will by knowingly allowing exposure to contaminated soils and dust as explained above at MCBH.

98) As explained above, Defendants failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. Additionally:

    a. At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

36

b. At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

c. At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

d. At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

e. At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

99) Defendants' actions are particularly egregious because they communicated, solicited and bargained with Plaintiffs through licensed real estate agents who are, or should be aware, of the need to disclose all known unsafe and hazardous conditions at properties they market and sell.

37

100) This failure to warn includes but is not limited to Defendants' knowing violation of their Pesticide Soils Management Plan by failing to provide notification under the Plan, failure to maintain detailed maps identifying the location of pesticide-contaminated soils, failure to warn that fugitive dust potentially contained pesticide-contaminated soil, failure to disclose pesticide-contaminated landfills throughout MCBH beneath "new" homes.

101) Defendants have therefore breached their duty to warn military families at MCBH and Plaintiffs are entitled to all rights and remedies, which includes their reasonable attorneys' fees and costs.

102) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

   a.  Economic–

      i.  Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

     ii.  Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii.  Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

  b.  Non-economic–

    i.  Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii.  Loss of use and enjoyment in their homes and community;

    iii.  Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv.  Loss of aesthetic and recreational satisfaction in their community.

103) Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs and their families.

104) Defendants' conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

105) As a proximate and legal result of Defendants' negligence, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

Smith|Law
Revere & Associates

## SIXTH CLAIM FOR RELIEF
### (Negligent & Intentional Infliction of Emotional Distress - Defendants)

106) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

107) As explained above, while living at MCBH, Plaintiffs and their families were routinely and continuously exposed to pesticide-contaminated soils, dust, and neighborhoods that impacted their quality of life at MCBH.

108) As explained above, while living at MCBH, Plaintiffs and their families routinely contacted dirt and soil at MCBH.

109) Plaintiffs have since learned that MCBH contained wide-spread pesticide contamination.

    a. Although Defendants' Pesticide Soil Management Plan mandated that "no visible dust" should occur because of the risk of substantial exposure, substantial fugitive dust occurred at MCBH throughout the demolition of old housing and the construction of new housing that was personally experienced by Plaintiffs as described above.

    b. Although Defendants told Plaintiffs it was safe to work and play in their yards, Defendants now state that pets and children not be allowed to play in the yard near the foundation of original homes…that are unmarked.

40

c. When residents have asked for maps and other information that is supposed to be available to confirm their homes are safe, however, Defendants have been neither willing nor able to make such information available.

110) Despite actual knowledge of pesticide-contaminated soils at MCBH, Defendants provided no warning to military families and intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will in order to lease housing.

111) Defendants' intentional, negligent and/or reckless conduct, acts, and omissions have caused Plaintiffs' emotional distress, mental suffering, nervousness, and fear of exposure to harmful pesticides.

112) Knowingly and intentionally exposing Plaintiffs and their families to carcinogens and increased health risks without their knowledge is outrageous in any civilized community.

113) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

a. Economic–

41

  i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

  ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

  iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

 b. Non-economic–

  i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

  ii. Loss of use and enjoyment in their homes and community;

  iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

  iv. Loss of aesthetic and recreational satisfaction in their community.

114) Plaintiffs are entitled to all rights and remedies, which include their reasonable attorneys' fees and costs.

SMITH|LAW
REVERE & ASSOCIATES

115) Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs and their families.

116) Defendants' conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

117) As a proximate and legal result of Defendants' acts and omissions, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SEVENTH CLAIM FOR RELIEF
### (Fraud by Omission & Express Statement - Defendants)

103) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

104) Ohana MC expressly represents that the housing it provides is "safe and habitable" for military families within its leases to military families.

105) Similarly, Forest City RM is responsible for managing MCBH housing and for providing notification to residents under the lease on behalf of Ohana MC.[21]

---

[21] *See, e.g.* Ohana MC Lease Agreement at 4, ¶12 ("Owner is responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable."); *see also* ¶1 (Forest City Residential Management, Inc., is

43

106) All statements and representations made by Forest City RM are equally on behalf of Ohana MC because such statements are made under the scope of Forest City RM's agency in managing residential housing at MCBH.

107) Forest City RM's Community Handbook is incorporated into all lease agreements and has been provided to *every* military family from approx. 2006 to the present leasing residential housing at MCBH with Ohana MC. The Community Handbook expressly states that "[f]amilies can safely work and play in their yards," and that plants and vegetables can be grown on-site for consumption.[22]

108) Despite these representations, Defendants intentionally and knowingly omitted telling Plaintiffs and their families that pesticide-contaminated soils had been *confirmed* at MCBH. Instead, the Community Handbook only states that chlordane "may" be found.

109) Despite these representations, Defendants intentionally and knowingly omitted telling Plaintiffs that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

---

authorized to manage the Premises on behalf of Owner and to give an accept notices.")

[22] *See, e.g.* Forest City Residential Community Handbook Marine Corp Neighborhoods, at 16 and 17.

110) Despite these representations, Defendants intentionally and knowingly omitted telling military families that Defendants had decided it was acceptable to expose Plaintiffs and their families to pesticide contamination in excess of Tier 1 EALs.

111) Despite their ongoing representations in the MCBH Community Handbook, Forest City RM, on behalf of itself and Ohana MC, admitted in Spring 2014 that children and pets should <u>not</u> be allowed to play in their yards and that families should <u>not</u> grow fruits or vegetables in their yards if near the foundation of the pre-existing housing, which directly contradicts the representations of the Community Handbook to Plaintiffs.

112) Additionally, as more fully explained above, Defendants failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. For example:

   a. At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

   b. At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil

45

Management Plan to address widespread pesticide contamination at MCBH.

c.  At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

d.  At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

e.  At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

113) Ohana FC and Forest City RM have therefore committed fraud by omission against military families by claiming they provide safe housing while omitting that pesticide-contaminated soils had been confirmed at MCBH and that these soils pose increased health risks for military families.

114) Ohana FC and Forest City RM have also committed fraud by express statement by telling all military families in their leases that it is safe for families to work, play, and grow gardens in their yards when this was not true.

115) Forest City RM directly participated in fraud against military families because it has been aware that pesticide-contaminated soils were confirmed at MCBH, but repeatedly represented within its Community Handbook that families can safely work and play in their yards as well as grow gardens despite knowledge to the contrary. Similarly, despite actual knowledge that pesticide-contaminated soils were confirmed at MCBH, Forest City RM only states in its Community Handbook that chlordane "may" be found.

116) Because it controls the Community Handbook, Forest City RM has repeatedly and specifically authorized express misrepresentations to be made to military families and is directly responsible for the content of its fraudulent representations to military families at MCBH. Similarly, by incorporation of the Community Handbook into its leases and by utilizing Forest City RM as its agent, Ohana MC is responsible for the representations of Forest City RM.

117) In reliance upon Defendants' failure to warn and express statements, Plaintiffs have been exposed to pesticide contaminated soils at MCBH and prevented from taking safety measures to protect themselves and their families.

SMITH|LAW
REVERE & ASSOCIATES

118) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

a.  Economic–

  i.  Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

  ii.  Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

  iii.  Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b.  Non-economic–

  i.  Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

  ii.  Loss of use and enjoyment in their homes and community;

  iii.  Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

48

      iv.  Loss of aesthetic and recreational satisfaction in their community.

118) Defendants' fraudulent conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs.

119) Defendants' fraudulent acts and omissions therefore justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

120) Because of Defendants' fraudulent acts and omissions, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

121) Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

## EIGHTH CLAIM FOR RELIEF
### (Negligent Misrepresentation by Omission & Express Statement- Defendants)

122) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

123) Per the terms of its residential lease with military families at MCBH, Ohana MC represents that it will provide safe and habitable housing for military families.

49

124) Similarly, Forest City RM is responsible for managing MCBH housing and for providing notification to residents under the lease on behalf of Ohana MC.[23] All statements and representations made by Forest City RM are therefore equally on behalf of Ohana MC to the extent such statements are made under the scope of Forest City RM's agency.

125) Forest City RM's Community Handbook, which is incorporated into all lease agreements by Ohana MC and has been provided to *every* military family from approx. 2006 to the present who has leased residential housing at MCBH, expressly states that "[f]amilies can safely work and play in their yards," and that plants and vegetables can be grown on-site for consumption.[24]

126) Despite these representations, Ohana MC and Forest City negligently failed to inform military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

---

[23] *See, e.g.* Ohana MC Lease Agreement at 4, ¶12 ("Owner is responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable."); *see also* ¶1 (Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner and to give an accept notices.")

[24] *See, e.g.* Forest City Residential Community Handbook Marine Corp Neighborhoods, at 16 and 17.

Smith|Law
Revere & Associates

127) Despite these representations, Ohana MC and Forest City negligently omitted telling military families that Defendants had decided it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs.

128) Despite these representations, Ohana MC and Forest City now acknowledge that gardens should not be grown and children and pets should not be allowed to play in their yards near the foundation of the pre-existing housing.

129) Despite knowledge that pesticide contaminated soils had been *confirmed* at MCBH, Defendants' Community Handbook instead only states that chlordane "may" be found.

130) Additionally, as more fully explained above, Defendants failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. For example:

　　c.　At no time before entering leases at MCBH were any Plaintiffs told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

　　d.　At no time before entering leases at MCBH were any Plaintiffs told that Ohana MC was engaged in a community wide Pesticide Soil

Management Plan to address widespread pesticide contamination at MCBH.

e.  At no time before entering leases at MCBH were any Plaintiffs told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

f.  At no time before entering leases at MCBH were Plaintiffs told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

g.  At no time before entering leases at MCBH were any Plaintiffs told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

131) Defendants' claim that they would provide safe housing within their leases and that it is safe to work, play, and use their yards while omitting that pesticide-contaminated soils were confirmed at MCBH and that such soils pose increased health risks for military families are negligent misrepresentations to Plaintiffs.

132) Ohana FC and Forest City RM have jointly participated in, approved, and directed this tortious conduct and representations against military families.

133) Forest City RM drafts and controls the Community Handbook as well as controls and directs virtually all representations to military families. Although Forest City RM possessed knowledge that pesticide-contaminated soils had been confirmed at MCBH, Forest City RM's Community Handbook failed to disclose this fact and instead represented that families can safely work, play and use their yards. Forest City RM has therefore repeatedly participated in and authorized misrepresentations to military families and is directly responsible for its misrepresentations to military families at MCBH.

134) Similarly, by incorporation of the Community Handbook into its leases and by utilizing Forest City RM as its agent, Ohana MC is responsible for the conduct and representations of Forest City RM as well as its own representations within its lease agreements.

135) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

    a. Economic–

        i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance

Smith|Law
Revere & Associates

services, for failure to provide the MCBH home and community represented by Defendants;

ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic–

i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

ii. Loss of use and enjoyment in their homes and community;

iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

iv. Loss of aesthetic and recreational satisfaction in their community.

136) Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs.

137) Defendants' acts and omissions justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

138) Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

## NINTH CLAIM FOR RELIEF[25]
### (Unfair Competition– Defendants)

139) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

140) Hawaii Revised Statutes § 480-2(a) provides, in relevant part: "Unfair methods of competition … in the conduct of any trade or commerce are unlawful."[26]

141) The sale of residential leases by licensed real estate agents, the sale of insurance policies, and the sale of property management and maintenance services by professional residential property management companies all constitute "any trade or commerce" within the meaning of Hawaii Revised Statutes chapter 480.

---

[25] This Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [ECF 63] dismissed Plaintiffs' Ninth Claim (Unfair Competition) with prejudice. Plaintiffs' restate this claim unchanged within this Amended Complaint solely for consistency of the claim numbering and to clarify that Plaintiffs intend no waiver of any potential argument for appeal by the filing of this Amended Complaint. Plaintiffs do not attempt to re-allege this claim by including it within their Amended Complaint.

[26] HAW. REV. STAT. §480-2.

SMITH|LAW
REVERE & ASSOCIATES

142) Plaintiffs are "any person(s)" who have been "injured in the person's business or property by reason of anything forbidden or declared unlawful by [HRS] chapter [480]," pursuant to Hawaii Revised Statutes § 480-13(a).

143) Hawaii Revised Statutes § 480-1 defines the term "purchase" or "buy" to include "contract to buy", **"lease", "contract to lease"**, "license" and "contract to license".   The purchase of "leases" falls within the conduct regulated by Hawaii Revised Statutes chapter 480.

   a. The purchase of "leases" from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes chapter 480.

   b. The purchase of renter's insurance policies from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes chapter 480.

   c. The purchase of professional residential property management services falls within conduct regulated by Hawaii Revised Statutes chapter 480.

144) By failing to provide notice to Plaintiffs about the existence, nature and extent of pesticide contamination at MCBH, Defendants engaged in unfair competition and enjoyed a competitive advantage over other real estate agents, private landlords, property management service providers, and insurance providers in the area who were competing for BAH dollars.

56

145) Plaintiffs have sustained damages as a result of Defendants' unfair competition, which includes the overpayment for rent, real estate sales commissions, property management and maintenance services and future medical monitoring of their health and the health of their family members.

146) As a proximate and legal result of Defendants' unfair competition, members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## TENTH CLAIM FOR RELIEF
### (Trespass)

147) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

148) As described above, during the relevant time period, Defendants' conduct repeatedly caused the release of dust into the surrounding MCBH community, which interfered with all Plaintiffs' ability to use and enjoy their homes and community.

149) Additionally, during the relevant time period, Defendants' conduct repeatedly caused the release of visible fugitive construction dust that was deposited in substantial amounts on, and in, the real property of the Moseley,

Smith|Law
Revere & Associates

Bean, Pahona, and Lake families, which interfered with Plaintiffs' ability to use and enjoy their homes.

150) This dust directly interfered with these Plaintiffs' exclusive possession of their property by requiring these Plaintiffs to constantly expend time and money on cleaning.

151) Defendants are liable for the trespass of its construction into the community and onto the property of Moseley, Bean, Pahona, and Lake Plaintiffs.

152) Because of the invasion of dust onto their property, these Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

   h.  Economic–

      i.  Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

     ii.  Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

58

      iii.  Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

  i.  Non-economic–

      i.  Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

      ii.  Loss of use and enjoyment in their homes and community;

      iii.  Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

      iv.  Loss of aesthetic and recreational satisfaction in their community.

153) Further, Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs. Indeed, despite knowledge of the hazards posed by its construction operations and fugitive dust, Defendants failed to take steps to prevent the release of construction dust into the community nor did it provide any adequate and timely warning to Plaintiffs.

154) Defendants' reckless conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

155) As a proximate and legal result of Defendants conduct, Plaintiffs have been compelled to resort to litigation and therefore request an award of all

Smith|Law
Revere & Associates

consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## ELEVENTH CLAIM FOR RELIEF
### (Nuisance)

156) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

157) During the relevant time period, Defendants' conduct repeatedly caused the release of dust into: a) the MCBH community; b) individual real and/or personal property in possession of Plaintiffs, which interfered with Plaintiffs' ability to use and enjoy their homes.

158) As more fully described above, Defendants' repeated release of construction dust, soils, and dirt, resulted in harm, inconvenience, and unlawfully annoyed and disturbed the Plaintiffs' free use, possession, and enjoyment of their property.

159) Defendants' construction operations that resulted in the release of visible fugitive construction dust during the relevant time period constituted a nuisance to Plaintiffs.

160) Defendants' failure to carry out its Pesticide Soil Management Plan interfered with Plaintiffs' use and enjoyment of the MCBH community and homes.

SMITH|LAW
REVERE & ASSOCIATES

161) The undisputed fact that Defendants did not disclose the existence of widespread pesticide contamination interfered with Plaintiffs' use and enjoyment of the MCBH community and homes.

162) Defendants are therefore liable for damages that are the legal and proximate result of the nuisance created by their conduct.

163) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

   a. Economic–

      i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

      ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

      iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

   b. Non-economic–

    i.  Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii.  Loss of use and enjoyment in their homes and community;

    iii.  Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv.  Loss of aesthetic and recreational satisfaction in their community.

164) Further, Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs. Indeed, despite knowledge of the hazards posed by its construction operations, Defendants failed to take steps to prevent the release of construction dust into the community and failed to provide any adequate and timely warning to Plaintiffs of widespread pesticide contamination at MCBH.

165) Defendants' reckless conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

166) As a proximate and legal result of Defendants' conduct, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

SMITH|LAW
REVERE & ASSOCIATES

WHEREFORE, Plaintiffs pray for judgment against Defendants and in favor of the Plaintiffs as follows:

1. General, special, treble, and consequential damages in an amount to be proven at trial;

2. Reasonable attorneys' fees and costs;

3. Disgorgement of profits due to Defendants' unjust enrichment;

4. Any prejudgment interest provided by statute;

5. Punitive damages for Defendants' wanton, reckless, and grossly negligent conduct;

6. For such other and further relief at law or equity as the Court may deem just and proper.

Dated: Kailua, Hawai`i, this 20th day of September 2017,

P. Kyle Smith
Terrance M. Revere
*Attorneys for Plaintiffs*

SMITH|LAW
REVERE & ASSOCIATES

**SMITH | LAW**
P. KYLE SMITH                9533
970 N. Kalaheo, Suite A301
Kailua, HI 96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE      5857
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

*Attorneys for Plaintiffs*


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Plaintiffs Kenneth Lake, Crystal Lake, Harold Bean, Melinda Bean, Kyle Pahona, Estel Pahona, Timothy Moseley, Ashley Moseley, Ryan Wilson, and Heather Wilson <br><br>Plaintiffs, <br><br>vs. <br><br>Ohana Military Communities, LLC, Forest City Residential Management, Inc., and DOE Defendants 1-10, <br><br>Defendants. | Civ. No.  1:16-CV-00555 LEK-KJM <br><br><br>**DEMAND FOR JURY TRIAL** <br><br><br>JUDGE LESLIE E. KOBAYASHI <br><br>No Trial Date Set |

Plaintiffs Kenneth Lake, et al., pursuant to Rule 38 of the Hawaii Rules of Civil Procedure, by and through their undersigned counsel, hereby demand trial by jury on all issues triable herein.

Dated: Honolulu, Hawai`i, this 20th day of September 2017.

P. Kyle Smith
Terrance M. Revere
*Attorneys for Plaintiffs*

SMITH|LAW
REVERE & ASSOCIATES

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Plaintiffs Kenneth Lake, Crystal Lake, Harold Bean, Melinda Bean, Kyle Pahona, Estel Pahona, Timothy Moseley, Ashley Moseley, Ryan Wilson, and Heather Wilson<br><br>Plaintiffs,<br><br>vs.<br><br>Ohana Military Communities, LLC, Forest City Residential Management, Inc., and DOE Defendants 1-10,<br><br>Defendants. | Civ. No.  1:16-CV-00555 LEK-KJM<br><br><br>**CERTIFICATE OF SERVICE**<br><br><br>JUDGE LESLIE E. KOBAYASHI<br><br>No Trial Date Set |

I hereby certify that, on the dates and by the method of service below, a true and correct copy of the foregoing First Amended Complaint was served on the following by CM/ECF:

    COX FRICKE
    Joachim P. Cox      jcox@cfhawaii.com
    Randall Whattoff    rwhattoff@cfhawaii.com
    Kamala S. Haake     khaake@cfhawaii.com

    GOODSILL ANDERSON QUINN & STIFEL
    Lisa Munger         lmunger@goodsill.com

DATED this 20th day of September 2017.

SMITH|LAW
P. KYLE SMITH, ESQ.
Hawaii Bar No. 9533
970 N. Kalaheo, Ste. A301
Kailua, Hawaii 96734

66

SMITH|LAW
REVERE & ASSOCIATES