IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KENNETH LAKE, CRYSTAL LAKE,      )      CIVIL 16-00555 LEK-KJM
HAROLD BEAN, MELINDA BEAN,       )
KYLE PAHONA, ESTEL PAHONA,       )
TIMOTHY MOSELEY, ASHLEY          )
MOSELEY, RYAN WILSON, and        )
HEATHER WILSON                   )
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )
                                 )
OHANA MILITARY COMMUNITIES,      )
LLC, FOREST CITY RESIDENTIAL     )
MANAGEMENT, INC.; and DOE        )
DEFENDANTS 1-10,                 )
                                 )
          Defendants.            )
_____ )


**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE
PLAINTIFFS' FIRST AMENDED COMPLAINT [DKT 75]**

On October 4, 2017, Defendants Ohana Military

Communities, LLC ("Ohana") and Forest City Residential

Management, LLC ("Forest City" and collectively, "Defendants")

filed their Motion to Dismiss and/or Strike Plaintiffs' First

Amended Complaint [Dkt 75] ("Motion").[1]  [Dkt. no. 76.]

Plaintiffs Kenneth Lake, Crystal Lake, Harold Bean, Melinda Bean,

Kyle Pahona, Estel Pahona, Timothy Moseley, Ashley Moseley,

Ryan Wilson, and Heather Wilson ("Plaintiffs") filed their

---

[1] Defendants state that Forest City Residential Management, LLC is the successor by conversion to Forest City Residential Management, Inc. [Mem. in Supp. of Motion at 2-3.] Forest City Residential Management, Inc. is the entity named in the First Amended Complaint and reflected in the district court's docket.

memorandum in opposition on December 13, 2017, and Defendants filed their reply on December 20, 2017. [Dkt. nos. 79, 82.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). Defendants' Motion is hereby granted in part and denied in part for the reasons set forth below. Specifically, the Motion is granted insofar as: Plaintiffs' unfair and deceptive acts or practices ("UDAP") claim and unfair methods of competition ("UMOC") claim are stricken; Plaintiffs' claim that Defendant breached the landlord tenant code by failing to comply with the applicable building codes and housing laws is dismissed with prejudice; Plaintiffs Harold Bean and Melinda Bean's ("the Beans") nuisance claim is dismissed with prejudice; and Plaintiffs Timothy Moseley and Ashley Moseley's ("the Moseleys") nuisance claim is dismissed with prejudice. The Motion is denied in all other respects.

## BACKGROUND

Plaintiffs filed their Complaint in state court on September 14, 2016. Defendants filed its Notice of Removal on October 13, 2016. [Dkt. no. 1.] The factual allegations of the Complaint are summarized in this Court's August 1, 2017 Order

Granting in Part and Denying in Part Defendants' Motion to Dismiss ("8/1/17 Order"). [Dkt. no. 63.[2]]

The Complaint alleged the following claims: breach of contract against Ohana ("Count I"); breach of the implied warranty of habitability against Ohana ("Count II"); a claim against Defendants for violation of the Landlord Tenant Code, Haw. Rev. Stat. Chapter 521 ("Chapter 521" and "Count III"); an unfair and deceptive trade practices ("UDAP") claim against Defendants pursuant to Haw. Rev. Stat. § 480-2 ("Count IV"); a negligent failure to warn claim against Defendants ("Count V"); a claim against Defendants for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED" and "Count VI"); a fraud claim against Defendants ("Count VII"); a negligent misrepresentation claim against Defendants ("Count VIII"); an unfair competition claim ("UMOC") against Defendants pursuant to § 480-2(a) ("Count IX"); a trespass claim against Defendants ("Count X"); and a nuisance claim against Defendants ("Count XI").

The 8/1/17 Order dismissed Counts IV, IX, and X with prejudice, and dismissed all of the remaining claims without prejudice. 2017 WL 4563079, at *12. On reconsideration, the

---

[2] The 8/1/17 Order is also available at 2017 WL 4563079. The 8/1/17 Order ruled on Defendants' October 20, 2016 motion to dismiss the original Complaint, [dkt. no. 8,] which will be referred to as "the Original Motion to Dismiss."

dismissal of Count X was changed to a dismissal without prejudice to the filing of a motion seeking leave to file a second amended complaint alleging a revised trespass claim. [Order Granting in Part and Denying in Part Pltfs.' Motion for Reconsideration of Order Granting in Part and Denying in Party Defs.' Motion to Dismiss, filed 10/12/17 (dkt. no. 78) ("10/12/17 Order"), at 8.[3]]

Plaintiffs filed their First Amended Complaint on September 20, 2017. [Dkt. no. 75.] Plaintiffs Ryan and Heather Wilson ("the Wilsons") were added to the caption. [First Amended Complaint at pg. 1.] The Wilsons were not listed on the docket sheet as plaintiffs because they were not included in the caption of the original Complaint, but they were included in the Complaint's section identifying the parties. [Notice of Removal, Decl. of Christine A. Terada, Exh. 1 (Complaint) at pg. 1 & ¶ 154.] The most relevant new factual allegations in the First Amended Complaint are summarized below:

-identification of the specific addresses at Kaneohe Marine Corp
    Base Hawaii ("MCBH") where Plaintiffs currently reside
    (Plaintiffs Kyle and Estel Pahona ("the Pahonas")) or
    previously resided (all other Plaintiffs); [First Amended
    Complaint at ¶¶ 6-10;]

-general allegations that Plaintiffs and their families routinely
    traveled to and visited different neighborhoods in MCBH, and
    therefore even Plaintiffs who did not live within MCBH
    neighborhoods where the soil was allegedly contaminated were
    exposed to the contaminants during those visits and travels;
    and Plaintiffs whose homes were not contaminated were

_____

[3] The 10/12/17 Order is also available at 2017 WL 4560123.

4

exposed to contaminated construction dust if their homes
were near remediation sites; [id. at ¶¶ 37-38;]

-allegations regarding how each of Plaintiffs' families "observed
and were routinely exposed to dust and dirt from the
demolition and construction of homes at MCBH"; [id. at
¶¶ 39-39.e, 43;]

-allegations that Plaintiffs generally observed construction dust
blowing from MCBH construction sites and experienced
construction dust settling on the exterior and interior of
their homes, vehicles, and other possessions; [id. at ¶¶ 40-
43;]

-allegations that the construction dust required Plaintiffs to
spend additional time cleaning their homes and personal
property and to purchase additional cleaning supplies and
air filtration products; [id. at ¶¶ 41-44;]

-allegations that the constant construction dust prevented
Plaintiffs from using and enjoying their homes and their
communities to the extent they would have done without the
dust; [id. at ¶ 45;]

-allegations that, before entering into their leases, Plaintiffs
were never told that: residential neighborhoods at MCBH had
soil and construction dust that were contaminated with
pesticides; Ohana adopted a Pesticide Soils Management Plan
("Soil Plan") to address the pesticide contamination at
MCBH; [id. at ¶¶ 46-47;] Ohana "was creating pesticide-
contaminated landfills below 'new' neighborhoods it was
leasing to military families"; [id. at ¶ 48;] they should
take precautions to avoid or minimize contact with soil,
dirt, and dust at MCBH; and Plaintiffs' families would be
exposed to increased risks of cancer and other health
outcomes; [id. at ¶¶ 49-50;]

-allegations that, had Defendants properly informed them about
the above, Plaintiffs would not have chosen to live at MCBH;
[id. at ¶¶ 52-55;] further, because of these conditions and
because of the failure to disclose, Defendants charged
Plaintiffs more for their rental homes at MCBH than
Defendants would have been able to charge if proper
disclosures had been made; [id. at ¶ 56;]

-allegations that, because Defendants did not warn Plaintiffs
about the risks, Plaintiffs, their families, and pets came

in contact with dust, dirt, and soil in MCBH without taking necessary precautions; [id. at ¶ 51;] and

-allegations that, because of Defendants' actions, "Plaintiffs are extremely concerned, fearful, and worried that they and their families have been exposed to dangerous chemicals and higher rates of adverse health outcomes while living at MCBH for themselves and their families" and they believe they have been denied "the MCBH community they were promised by Defendants," [id. at ¶¶ 57-58].

The First Amended Complaint alleges the same claims as the original Complaint: breach of contract against Ohana ("Amended Count I"); breach of the implied warranty of habitability against Ohana ("Amended Count II"); a Chapter 521 claim against Defendants ("Amended Count III"); a UDAP claim against Defendants ("Amended Count IV"); a negligent failure to warn claim against Defendants ("Amended Count V"); an NIED claim and an IIED claim against Defendants ("Amended Count VI"); a fraud claim against Defendants ("Amended Count VII"); a negligent misrepresentation claim against Defendants ("Amended Count VIII"); a UMOC claim against Defendants ("Amended Count IX"); a trespass claim against Defendants ("Amended Count X"); and a nuisance claim against Defendants ("Amended Count XI").

Amended Counts IV and IX were improperly included in the First Amended Complaint because Plaintiffs' UDAP and UMOC claims have already been dismissed with prejudice. Amended Counts IV and IX are therefore stricken.

On December 20, 2017, this Court issued an order
striking Amended Count X because Plaintiffs failed to file a
motion seeking leave to plead a revised trespass claim. [Dkt.
no. 81.] On February 28, 2018, Plaintiffs filed a motion seeking
leave to amend the First Amended Complaint to add a trespass
claim, but the magistrate judge denied the motion in an order
issued on April 17, 2018. [Dkt. nos. 90, 97.] Plaintiffs did
not appeal the magistrate judge's order to this Court.

Only Amended Counts I, II, III, V, VI, VII, VIII, and
XI will be addressed in this Order. The relevant portions of the
new factual allegations, as well as more detailed discussion of
Plaintiffs' damages, have been added to each Amended Count. See,
e.g., First Amended Complaint at ¶¶ 65-66 (Amended Count I),
¶¶ 72-74 (Amended Count II), ¶ 82 (Amended Count III), ¶¶ 98, 102
(Amended Count V), ¶¶ 112-13 (Amended Count VI), ¶¶ 112, 117-18
(first of two) (Amended Count VII),[4] ¶¶ 130, 135 (Amended
Count VIII), ¶¶ 160-61, 163 (Amended Count XI).

In the instant Motion, Defendants argue the additional
factual allegations in the First Amended Complaint are
insufficient to cure: the standing defect identified in the
8/1/17 Order; and the defects in Plaintiffs' claims that

---

[4] The First Amended Complaint is misnumbered. Although
Amended Count VI ends with paragraph 117, Amended Count VII
starts with paragraph 103 and contains two paragraphs numbered
118. [First Amended Complaint at pgs. 43-49.]

Defendants identified in the Original Motion to Dismiss but were not addressed in the 8/1/17 Order. Defendants urge this Court to dismiss all of Plaintiffs' remaining claims with prejudice.

**DISCUSSION**

## I. Standing

In the 8/1/17 Order, this Court stated:

> As to every remaining claim, each Plaintiff must plead sufficient factual content to draw the reasonable inference that he or she suffered an actual injury in fact – or faces an imminent injury – that is fairly traceable to Defendants' alleged actions and omissions, and that is likely to be redressed by a judgment in his or her favor.
>
> Plaintiffs have pled some factual allegations regarding soil contamination and construction dust at MCBH in general, but they have not pled sufficient factual allegations to allow this Court to draw the reasonable inference that each Plaintiff has suffered, or is imminently facing, an actionable injury. This Court therefore concludes that Counts I, II, III, V, VI, VII, VIII, and XI fail to state plausible claims for relief because Plaintiffs have not pled sufficient allegations regarding their standing to pursue these claims. . . .

2017 WL 4563079, at *12 (citations omitted).

The First Amended Complaint alleges all Plaintiffs experienced construction dust at MCBH settling on their rental homes, their persons, and/or their personal property, including during Plaintiffs' routine travels and visits to parts of MCBH beyond the immediate areas of their rental homes. This dust allegedly: caused Plaintiffs to spend additional time cleaning their homes and personal property; caused them to spend

additional resources on cleaning and air filtration supplies; and prevented them from using and enjoying their homes and the MCBH community as they would have without the dust. [First Amended Complaint at ¶¶ 39-45.] Plaintiffs allege Defendants now admit some of the MCBH neighborhoods "contained homes and soils contaminated by pesticides and other contaminants (asbestos, lead-based paint, extensive mold infestation, and other toxins)." [Id. at ¶ 38.] Plaintiffs allege all of them either lived in these "contaminated" neighborhoods or were regularly exposed to those neighborhoods because their daily lives involved regular travel "between MCBH neighborhoods on their way to various destinations." [Id. at ¶¶ 37-38.] Further, Plaintiffs assert that, before they entered into their leases for their MCBH homes, they were not told about pesticide-contaminated soil and construction dust in the MCBH residential neighborhoods. [Id. at ¶ 46.] They state that, if they had been told about the contamination, "they would not have chosen MCBH housing for their family and/or would have taken additional steps to have protected their famil[ies]." [Id. at ¶ 52.] Plaintiffs also allege the pesticide contamination at MCBH "exposed military families at MCBH to unsafe conditions including higher rates of cancer and other adverse health outcomes." [Id. at ¶ 33.]

In considering Defendants' Motion, all of Plaintiffs' factual allegations are assumed to be true. See Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) ("for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true" (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007))).  In light of that assumption, Plaintiffs have pled sufficient facts supporting a reasonable inference that each Plaintiff has standing because he or she has suffered an actionable injury.  See id. ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing Twombly, 550 U.S. at 556)).

To the extent the Motion argues Plaintiffs failed to plead sufficient standing allegations, the Motion is denied.  The Court now turns to Defendants' challenges to each of Plaintiffs' claims.

## II.  **Amended Count I – Breach of Contract**

Defendants argue Amended Count I fails because the First Amended Complaint does not identify the specific contractual provision Ohana allegedly violated.  Amended Count I alleges Ohana failed to:
"a. Disclose the presence, nature, or extent of pesticide-contaminated soils at MCBH; b. Provide safe and habitable housing; c. Provide a safe and habitable community at MCBH; and d. Disclose or fully implement its Pesticide Soil Management Plan."  [First Amended Complaint at ¶ 63.]  The First Amended

10

Complaint alleges that paragraph 12 of the MCBH leases states the "Owner" – *i.e.*, Ohana by and through Forest City – "is responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable." [Id. at pg. 43 n.21.] This allegation appears within another count, but, when the First Amended Complaint is read as a whole, it is apparent that Defendants' alleged failure to provide safe and habitable housing violated a specific provision of the leases. In addition, the First Amended Complaint alleges: Plaintiffs' MCBH leases contained a mediation provision; Plaintiffs demanded Ohana mediate regarding its failure to disclose the contamination issues and its failure to provide safe and habitable housing; and Ohana refused to mediate with Plaintiffs, in violation of the mediation provision. [Id. at ¶¶ 34-36.]

Defendants argue there is no specific provision of Plaintiffs' MCBH leases that would support Plaintiffs' allegations about the safety and habitability of the MCBH community in general. However, the First Amended Complaint alleges Defendants' Residential Community Handbook for Marine Corps Neighborhoods ("Community Handbook") is provided to MCBH residents, and the leases require the residents to agree to comply with the handbook. [Id. at ¶¶ 32.a & n.11.] According to the First Amended Complaint, the Community Handbook represented "Defendants would provide 'exceptional service,'" [id. at ¶ 87.a

11

& n.20 (quoting Community Handbook at 1),] as well as "'safe and healthy premises,'" [id. at ¶ 87.a & n.20 (quoting Community Handbook at 15)]. It can be reasonably inferred from the factual allegations of the First Amended Complaint that: the Community Handbook was incorporated into Plaintiffs' MCBH leases; both Plaintiffs and Defendants had obligations under the Community Handbook; and those obligations related to areas beyond the specific homes that were the subject of the MCBH leases. Read as a whole, the First Amended Complaint alleges sufficient factual allegations to support a plausible position that Defendants agreed to provide safe and habitable conditions in the MCBH community generally.

"The elements of a breach of contract claim are (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract." Marine Lumber Co. v. Precision Moving & Storage Inc., CIVIL 16-00365 LEK-RLP, 2017 WL 1159093, at *6 (D. Hawai`i Mar. 28, 2017) (citation and internal quotation marks omitted). The First Amended Complaint alleges sufficient facts to support each element, and therefore Amended Count I states a plausible breach of contract claim. Defendants' Motion is denied as to Amended Count I.

12

## III. Amended Count II – Breach of the
## Implied Warranty of Habitability

Other than the standing argument this Court has already rejected, Defendants do not present any other arguments why Amended Count II fails to state a plausible claim for relief. See, e.g., Mem. in Supp. of Motion at 20 ("Counts 1, 3, 5-8, and 11 Should Be Dismissed for Failure to Plead Necessary Elements of Each Claim"). Defendants have failed to identify a defect in Amended Count II that warrants dismissal.

> A property owner breaches the implied warranty of habitability if he leases his property with a defect or unsafe condition that is "of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living." Armstrong v. Cione, 736 P.2d 440, 445 (Haw. Ct. App. 1987); Lemle v. Breeden, 462 P.2d 470, 474 (Haw. 1969) (recognizing the doctrine of implied warranty of habitability and finding rat infestation of leased premises constituted a breach). The leased premises must be substantially unsuitable for living so that the breach of the warranty would constitute a constructive eviction of the tenant. Armstrong, 736 P.2d at 445.

Barber v. Ohana Military Communities, LLC, Civil No. 14-00217 HG-KSC, 2014 WL 3529766, at *6 (D. Hawai`i July 15, 2014). The First Amended Complaint alleges sufficient facts to support each of the required elements. This Court concludes that Amended Count II states a plausible claim for breach of the implied warranty of habitability and therefore denies Defendants' Motion as to Amended Count II.

## IV. Amended Count III - Violation of Chapter 521

Amended Count III alleges Defendants violated Haw. Rev. Stat. §§ 521-10 and 521-42(a)(1). [First Amended Complaint at ¶¶ 77-78.] Section 521-10 states: "Every duty imposed by this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement." Section 521-42(a) states: "The landlord shall at all times during the tenancy: (1) Comply with all applicable building and housing laws materially affecting health and safety."

The First Amended Complaint alleges Defendants knew about widespread pesticide contamination at MCBH but failed to disclose that fact to Plaintiffs and failed to take adequate actions to protect Plaintiffs from the contamination, in spite of their contractual obligation to provide safe and healthy housing. [First Amended Complaint at ¶¶ 79-80.] These allegations are sufficient to support a plausible claim that Defendants failed to perform their duties and obligations in good faith, in violation of § 521-10. Defendants argue § 521-10 does not impose any actionable duties on them. Although not cited by Plaintiffs, Haw. Rev. Stat. § 521-63 states:

> (a) If any condition within the premises deprives the tenant of a substantial part of the benefit and enjoyment of the tenant's bargain under the rental agreement, the tenant may notify the

14

> landlord in writing of the situation and, if the
> landlord does not remedy the situation within one
> week, terminate the rental agreement.  The notice
> need not be given when the condition renders the
> dwelling unit uninhabitable or poses an imminent
> threat to the health or safety of any
> occupant. . . .
>
> (b)  If the condition referred to in subsection
> (a) was caused wilfully or negligently by the
> landlord, the tenant may recover any damages
> sustained as a result of the condition.

As previously noted, Plaintiffs have alleged the contaminated

soil at MCBH deprived them of the use and enjoyment of their

rental homes and of the MCBH community in general and Defendants

have failed to adequately respond to the contamination issues.

Plaintiffs also allege Defendants' actions were willful and/or

negligent.  This Court concludes the alleged violation of § 521-

10 is actionable pursuant to § 521-63, and therefore denies the

Motion as to the portion of Amended Count III based on § 521-10.

However, Plaintiffs have not identified any specific

"building or housing laws materially affecting health and safety"

that Defendants allegedly violated.  Amended Count III therefore

fails to a state a plausible claim for violation of

§ 521-42(a)(1) and must be dismissed.[5]

---

[5] This Court acknowledges that the district court in <u>Barber</u>,
which is a related case, ruled otherwise.  The district court in
<u>Barber</u> ruled the plaintiffs sufficiently stated a claim for
violation of § 521-42(a)(1), which it described as "the Hawaii
state statutory codification of the implied warranty of
habitability."  2014 WL 3529766, at *7-8.  This Court
respectfully disagrees, based on the plain language of

(continued...)

"As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." <u>Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.</u>, 708 F.3d 1109, 1118 (9th Cir. 2013) (brackets, citation, and internal quotation marks omitted). In the Original Motion to Dismiss, Defendants argued Plaintiffs did not allege a violation of "'applicable building or housing laws materially affecting health and safety.'" [Mem. in Supp. of Original Motion to Dismiss at 26.] Although this issue was not addressed in the 8/1/17 Order because the standing issue was dispositive, Plaintiffs had notice of this defect in their § 521-42(a)(1) claim, and they failed to cure it when they filed their First Amended Complaint. Further, Plaintiff's memorandum in opposition to the instant Motion does not identify how Plaintiffs would amend this claim, if given the opportunity to do so. These facts give "a strong indication that the plaintiffs have no additional facts to plead." <u>See</u> <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 1007 (9th Cir. 2009) (citation and quotation marks omitted). This Court therefore concludes Plaintiff would not be able to cure the defect in their § 521-42(a)(1) claim by amendment. Defendants' Motion is granted

---

[5] (...continued)
§ 521-42(a)(1), which refers to "building and housing **laws**."

16

insofar as the portion of Amended Count III based on
§ 521-42(a)(1) is dismissed with prejudice.

**V.     Amended Count V – Negligent Failure to Warn**

      Defendants argue Amended Count V fails because
Plaintiffs do not sufficiently allege how they were impacted by
contaminated construction dust.  Based on the same allegations
discussed regarding Plaintiffs' standing, this Court concludes
Plaintiffs have pled sufficient factual allegations to support a
plausible claim for negligent failure to warn.  See generally
Barber, 2014 WL 3529766, at *9 (discussing the elements of a
negligence claim and the duty to warn).  Defendants' Motion is
denied as to Amended Count V.

**VI.    Amended Count VI – IIED and NIED**

      Defendants argue Amended Count VI fails because
Plaintiffs have not pled sufficiently outrageous conduct to
support an IIED claim, and they have not pled the physical
manifestation of harm required to support an NIED claim based on
injury to property.

**A.     IIED**

      Barber also involved an IIED claim.  The district court
identified the elements of an IIED claim as:

> (1) that the act allegedly causing the harm was
> intentional or reckless, (2) that the act was
> outrageous, and (3) that the act caused
> (4) extreme emotional distress to another.  Enoka

<u>v. AIG Hawaii Ins. Co., Inc.</u>, 128 P.3d 850, 872 (Haw. 2006).

     The term "outrageous" has been construed to mean "without just cause or excuse and beyond all bounds of decency." <u>Id.</u> (citing <u>Lee v. Aiu</u>, 936 P.2d 655, 670 n.12 (Haw. 1997)). Acting with tortious or criminal intent, or intent to inflict emotional distress, does not necessarily rise to the levels of outrageousness required for an IIED claim. <u>Soone v. Kyo-Ya Co., Ltd.</u>, 353 F. Supp. 2d 1107, 1116 (D. Haw. 2005) (citing <u>Ross v. Stouffer Hotel Co. Ltd.</u>, 879 P.2d 1037, 1048 (Haw. 1994)).[6]

     The term "extreme emotional distress" includes, "inter alia, mental suffering, mental anguish, nervous shock, and other highly unpleasant mental reactions." <u>Enoka</u>, 128 P.3d at 872 (internal quotations omitted).

     Plaintiffs have stated that Defendants' intentional and reckless actions caused "emotional distress" and "fear." Knowingly exposing families to carcinogens and increased health risks may rise to the level of "outrageousness." The Complaint contains sufficient facts to state a claim for intentional infliction of emotional distress.

<u>Id.</u> at *10-11 (some citations omitted). This Court agrees with the district court in <u>Barber</u>. Based on the factual allegations of the First Amended Complaint, reasonable people may differ on the issue of whether Defendants' conduct was sufficiently outrageous to support an IIED claim. Because the issue of outrageousness cannot be determined in a motion to dismiss,

---

[6] "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." <u>Young v. Allstate Ins. Co.</u>, 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008).

Defendant's Motion is denied as to the portion of Amended
Count VI alleging an IIED claim.

   **B.**   **NIED**

        The district court in <u>Barber</u> stated the elements of an
NIED claim are:

> (1) that the defendant engaged in negligent
> conduct; (2) that the plaintiff suffered serious
> emotional distress; and (3) that such negligent
> conduct of the defendant was a legal cause of the
> serious emotional distress. <u>Wood v. Greenberry
> Fin. Servs., Inc.</u>, 907 F. Supp. 2d 1165, 1186 (D.
> Haw. 2012).[7]  An NIED claim is merely a
> negligence claim alleging a wholly psychic injury.
> Duty and breach of duty are essential elements of
> an NIED claim and are analyzed utilizing ordinary
> negligence principles.  <u>Kahoohanohano v. Dep't of
> Human Servs.</u>, 178 P.3d 538, 582 (Haw. 2008).
>
>      Pursuant to HRS § 663-8.9, a party cannot
> bring an NIED claim "if the distress or
> disturbance arises solely out of damage to
> property or material objects," unless the
> emotional distress results in physical injury to
> or mental illness of the person who experiences
> the emotional distress.  <u>Doe Parents No. 1 v.
> Dep't of Educ.</u>, 58 P.3d 545, 580-81 (Haw. 2002).
> Requiring physical injury or mental illness as a
> predicate injury for an NIED claim attempts to
> avoid the possibility of trivial or fraudulent
> claims due to the subjective nature of assessing
> purely psychological injury, while promoting the
> purpose of negligence law.  <u>Id.</u> at 579.
>
>      The Hawaii Supreme Court has carved out
> exceptions to the predicate injury requirement in
> cases that provide "the requisite assurance that
> plaintiff's psychological distress is trustworthy
> and genuine." <u>Doe Parents No. 1</u>, 58 P.3d at 581.
> No physical manifestation of a psychological

---

        [7] <u>Wood</u> was abrogated on other grounds by <u>Compton v.
Countrywide Financial Corp.</u>, 761 F.3d 1046 (9th Cir. 2014).

injury is required for an NIED claim where a
reasonable person, normally constituted, would be
unable to adequately cope with the mental stress
engendered by the circumstances of the case.
<u>Kahoohanohano</u>, 178 P.3d at 582.

NIED claims have been permitted where a
plaintiff alleged exposure to HIV-positive blood.
<u>John & Jane Roes v. FHP, Inc.</u>, 985 P.2d 661, 668
(Haw. 1999). Other claims have been permitted
based on the mishandling of a corpse and negligent
placement of a child in an environment with a
child molester. <u>Freeland v. Cnty[.] of Maui</u>, 2013
WL 6528831, *22 (D. Haw. Dec. 11, 2013).

The Complaint claims Plaintiffs suffered
emotional distress because they were exposed to
carcinogens at Marine Corp Base Hawaii because of
Defendants' negligent conduct. A defendant may be
liable for negligent infliction of emotional
distress when he causes a plaintiff's exposure to
a significant health risk. <u>John & Jane Roes</u>, 985
P.2d at 668. Plaintiffs have sufficiently pled a
cause of action for NIED based on the allegations
that Defendants exposed Plaintiffs to significant
health risks.

<u>Id.</u> at *10 (some citations omitted). This Court agrees with the

district court in <u>Barber</u>. The factual allegations of the First

Amended Complaint are sufficient to plead a plausible NIED claim

based on exposure to significant health risks. Defendants'

Motion is denied as to the portion of Amended Count VI alleging

an NIED claim.

**VII. Amended Counts VII and VIII –**
     <u>**Fraud and Negligent Misrepresentation**</u>

Defendants argue Amended Counts VII and VIII fail

because Plaintiffs have not sufficiently alleged detrimental

reliance. Reliance is a required element of a claim for

intentional/fraudulent misrepresentation and a claim for negligent misrepresentation. Fisher v. Grove Farm Co., Inc., 123 Hawai`i 82, 103, 230 P.3d 382, 403 (Ct. App. 2009) (IIED) (citing Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)); Aana v. Pioneer Hi-Bred Intern., Inc., Civil No. 12-00231 LEK-BMK, 2014 WL 806224, at *12 (D. Hawai`i Feb. 27, 2014) (NIED) (some citations omitted) (citing Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai`i 309, 321, 47 P.3d 1222, 1234 (2002)). Based on the same allegations discussed previously regarding Plaintiffs' standing, this Court concludes Plaintiffs have pled sufficient factual allegations regarding their reliance to support plausible claims for intentional/fraudulent misrepresentation and negligent misrepresentation. See generally, Barber, 2014 WL 3529766, at *11-12 (discussing fraud, intentional representation, and negligent misrepresentation). Defendants' Motion is denied as to Amended Counts VII and VIII.

## VIII. Amended Count XI – Nuisance

Defendants argue Amended Count XI fails because: Plaintiffs have not pled sufficient factual allegations to support the claim; the Beans' and the Moseleys' nuisance claims are time-barred; and Plaintiffs do not allege the Pahonas and Plaintiffs Kenneth Lake and Crystal Lake ("the Lakes") have been impacted by construction dust.

## A.    The Beans and the Moseleys

This Court has recognized that Haw. Rev. Stat. § 657-7 applies to a claim for trespass to property.[8] <u>Aana v. Pioneer Hi-Bred Int'l, Inc.</u>, 965 F. Supp. 2d 1157, 1181 (D. Hawai\`i 2013).  The Beans have not lived at MCBH since January 2012, and the Moseleys have not lived there since November 2012.  [First Amended Complaint at ¶¶ 7, 9.]  Thus, they did not file their nuisance claim within two years after their exposure to contaminated soil and/or construction dust at MCBH ceased. Plaintiffs argue the Beans' and the Moseleys' nuisance claims are timely because the statute of limitations was tolled while <u>Barber</u> was pending because it was filed as a class action, and Plaintiffs were all members of the putative class.

The United States Supreme Court has stated:

> Nonnamed class members are . . . parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them.  <u>See</u> <u>American Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538 (1974).  Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation — to simplify litigation involving a large number of class members with similar claims — would be defeated. . . .

---

[8] Section 657-7 states: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."

_Devlin v. Scardelletti_, 536 U.S. 1, 10 (2002); _see also_ _id._ at 16
n.1 (Scalia, J., dissenting) (noting the tolling applies "between
the time the class action is filed and the time class
certification is denied").

In _Barber_, the plaintiffs alleged the following claims:
breach of contract against Ohana; breach of the implied warranty
of habitability against Ohana; a claim against Defendants for
violations of Chapter 521; a UDAP claim against Defendants; a
negligent failure to warn claim against Defendants; NIED and IIED
claims against Defendants; a fraud claim against Defendants; and
a negligent misrepresentation claim against Defendants. [_Barber_,
Second Amended Class Action Complaint for Damages & Injunctive
Relief, filed 1/20/15 (dkt. no. 76).[9]] Because there was no
nuisance claim at issue in _Barber_, the Beans' and the Moseleys'
nuisance claims were not tolled while _Barber_ was pending.
Further, Plaintiffs have not presented any other ground that
would support tolling of the statute of limitations on the Beans'
and the Moseleys' nuisance claims.

The Beans' and the Moseleys' nuisance claims are
therefore time-barred and must be dismissed. Further, this Court

---

[9] Neither the First Amended Class Action Complaint for
Damages & Injunctive Relief, [_Barber_, filed 8/29/14 (dkt. no.
25),] nor the Class Action Complaint for Damages, [_id._, Notice of
Removal, filed 5/6/14 (dkt. no. 1), Decl. of Christine A. Terada,
Exh. A (complaint filed in state court on 4/3/14),] alleged a
nuisance claim.

concludes it is clear Plaintiffs cannot cure the statute-of-limitations defect in the Beans' and the Moseleys' nuisance claims by amendment. Defendants' Motion is granted insofar as the Beans' and the Moseleys' nuisance claims are dismissed with prejudice.

**B.  <u>Sufficiency of the Allegations</u>**

Based on the same allegations discussed regarding Plaintiffs' standing, this Court concludes Plaintiffs have pled sufficient factual allegations regarding how all of the remaining Plaintiffs – including the Pahonas and the Lakes – were exposed to and impacted by allegedly contaminated construction dust. The remaining Plaintiffs have alleged sufficient factual allegations to state plausible nuisance claims. <u>See generally</u>, 8/1/17 Order, 2017 WL 4563079, at *11 (discussing requirements of a nuisance claim). Defendants' Motion is denied as to the remaining Plaintiffs' nuisance claims in Amended Count XI.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Defendants' Motion to Dismiss and/or Strike Plaintiffs' First Amended Complaint [Dkt 75], filed October 4, 2017, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as: Plaintiffs' UDAP and UMOC claims are STRICKEN; Plaintiffs' Haw. Rev. Stat. Chapter 521 claim alleging a violation of Haw. Rev. Stat. § 521-42(a)(1) is DISMISSED WITH PREJUDICE; the Beans' nuisance claim is DISMISSED

WITH PREJUDICE; and the Moseleys' nuisance claim is DISMISSED WITH PREJUDICE.  The Motion is DENIED in all other respects.

Defendants are ORDERED to file their answer(s) to the remaining portions of the First Amended Complaint by **June 29, 2018**.  This Court EMPHASIZES that the filing of any motion for reconsideration of this Order **will not affect** the deadline for Defendants' answer(s).  If a motion for reconsideration is filed and granted, this Court will allow Defendants to **amend** their answer to the First Amended Complaint, if necessary.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2018.



_/s/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States District Judge

KENNETH LAKE, ET AL. VS. OHANA MILITARY COMMUNITIES, LLC, ET AL; CIVIL 16-00555 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT [DKT 75]